Matthew FOTHERGILL, Karen Fothergill, and Anthony Fothergill, Plaintiffs,

v.

JONES COUNTY BOARD OF EDUCATION; Michael T. Bracy, as employee of Jones County Board of Education; Ethan Lenker, as employee of Jones County Board of Education; Pascal Mubenga, as employee of Jones County Board of Education; Joletha White, as employee of Jones County Board of Education; Bill Franklin, as employee of Jones County Board of Education; Shebana Rajput, individually and as employee of Jones County Board of Education; Vernon Franks, as agent of Jones County Board of Education; Defendants.

No. 4:09–CV–190–BO.

United States District Court, E.D. North Carolina, Eastern Division.

Jan. 8, 2012.

Stephen A. Dunn, Emanuel & Dunn, PLLC, Raleigh, NC, Charles Jeffreys Cushman, Raymond Earl Dunn, Jr., Emanuel & Dunn, PLLC, New Bern, NC, for Plaintiffs.

Curtis H. Allen, III, Kathleen P. Tanner Kennedy, Tharrington Smith, LLP, Raleigh, NC, for Defendants.

### ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the Court on Defendant Jones County Board of Education's Motion for Summary Judgment [DE 81]. Plaintiffs filed a response on August 24, 2011 [DE 85] and Defendants replied on September 13, 2011 [DE 86]. The motion is now ripe for adjudication. For the reasons listed below, Defendants' Motion is GRANTED and Plaintiff's claims are DISMISSED in their ENTIRETY.[1]

### BACKGROUND

On October 26, 2009, Plaintiffs filed a complaint, alleging that Matthew Fothergill[2], while a minor, was subjected to and continues to suffer severe physical, mental, and emotional trauma as a result of having been "sexually exploited, assaulted, and abused" by Shebana Rajput, his teacher at Jones Senior High School ("JSHS").

In August 2007, Matthew was a junior at JSHS. Ms. Rajput was his science teacher. In the fall, Ms. Rajput began asking Matthew to stay after class, inviting him to her home to do yard work, calling him on the phone, and providing him gifts and money. By March 2008, Ms. Rajput was having sexual intercourse with Matthew in her home. She also provided him with alcoholic beverages, gifts, money, and a cell phone. Matthew began to develop stomach pains, digestive tract illnesses, and began exhibiting behavioral problems at home and at school. From March until May of 2008, Matthew was absent from school for more than 30 days, but his parents were not notified by the school. Ms. Rajput bought Matthew a car in early May 2008. Suspicious of Matthew's story of how he acquired the car, his mother called the dealership on the car's sticker. The dealership identified Ms. Rajput as the purchaser of the car. Matthew's par-

---

1. Shebana Rajput has not entered an appearance in this action.

2. Throughout this Order, Matthew Fothergill will be referred to as "Matthew" to distinguish him from his father, Mr. Anthony Fothergill.

ents became aware of the sexual relationship and contacted the School Board to request emotional and educational support and rehabilitation for Matthew, which was refused. In May 2008, Ms. Rajput was charged with numerous sexual offenses for her contact with Matthew. In June 2008, Matthew sought to return to playing football at school but was ridiculed by his former football coach for Ms. Rajput's conduct and blamed by him for her criminal prosecution. Matthew and his family allege that the failure of Defendants to protect Matthew from sexual exploitation, assault, and abuse as well as their refusal to provide educational and emotional support and rehabilitation for Matthew in the aftermath of the relationship caused them to incur substantial medical and rehabilitation expenses, lost time from work, and mental and emotional anguish.

On October 20, 2010, this Court entered an Order, granting in part and denying in part Defendants' motion to dismiss the complaint. The Order dismissed all federal claims, but exercised supplemental jurisdiction over the remaining state law claims. The Court held that qualified immunity barred all claims against Defendants in their personal capacities and sovereign immunity barred all claims against the Board. Plaintiffs were allowed to proceed on their claims under the North Carolina Constitution against Defendant School Board for monetary damages.

## DISCUSSION

■ Federal Rule of Civil Procedure 56 provides that summary judgment will be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ As a federal court entertaining a state law claim, this court must apply the relevant state law as would the highest state court of the state under whose law the suit was brought. *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 957 F.2d 1153, 1156 (4th Cir.1992); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## I. Article I, Section 19 of the North Carolina Constitution

■ Plaintiffs allege that the School Board breached its duty to Matthew under Article I, Section 19, of the North Carolina Constitution. However, on these claims, Plaintiffs have failed to demonstrate a genuine dispute as to any material fact, and the Board is entitled to judgment as a matter of law.

North Carolina's Constitution provides that "[n]o person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin." Additionally, the state constitution provides that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." These provisions are interpreted coterminously with the equal protection and due process clauses of the United States Constitution. *Frye v. Brunswick Cnty. Bd. of Educ.,* 612 F.Supp.2d 694, 705–06 (2009). As noted in this Court's Order of October 20, 2010, Plaintiffs failed to state a claim under the federal equal protection and due process clauses. No genuine issue of material fact

exists as to these claims. Therefore, Plaintiffs also fail to state a claim under the state equal protection and due process clauses and summary judgment on these claims is granted.

## II. Article I, Section 15 of the North Carolina Constitution

 Plaintiffs correctly identify the right to a free public education, which is guaranteed by the North Carolina Constitution. N.C. Const. art. I, § 15. The North Carolina Supreme Court explained in *Leandro v. State* that this right has a qualitative content—that a student in North Carolina is entitled to expect have the opportunity to receive from the state's public schools:

(1) sufficient ability to read, write, and speak the English language and a sufficient knowledge of fundamental mathematics and physical science to enable the student to function in a complex and rapidly changing society; (2) sufficient fundamental knowledge of geography, history, and basic economic and political systems to enable the student to make informed choices with regard to issues that affect the student personally or affect the student's community, state, and nation; (3) sufficient academic and vocational skills to enable the student to successfully engage in post-secondary education or vocational training; and (4) sufficient academic and vocational skills to enable the student to compete on an equal basis with others in further formal education or gainful employment in contemporary society.

*Leandro,* 346 N.C. 336, 488 S.E.2d 249, 255 (1997) (internal citations omitted). These rights were recognized in the context of the constitutionality of the state's system for funding public education, and no North Carolina court has applied the logic of *Leandro* to teacher-student sexual relationships. Plaintiffs have not established a "clear showing" that Matthew's right to educational opportunity, *as defined in Leandro,* has been denied by the School Board. While the Court recognizes the impropriety and detrimental effects of teacher-student sexual relationships, only those fundamental aspects of a sound basic education listed above have been cognizable in North Carolina state courts to date.

Plaintiffs are correct to note that, in *Corum v. Univ. of N.C.,* the North Carolina Supreme Court held that the common law can provide remedies for the adequate redress of violation of constitutionally protected rights in the absence of an adequate state remedy. 330 N.C. 761, 413 S.E.2d 276, 289 (1992). However, they take a step too far when they assert that the North Carolina Supreme Court has recognized a private right of action for monetary damages in the instant circumstance. *See Craig v. New Hanover Cnty. Bd. of Educ.,* 363 N.C. 334, 678 S.E.2d 351, 356–57 (2009). In *Craig,* a mentally disabled student brought a negligence action against the county board of education and a middle school principal for their failure to adequately protect him from a sexual assault. The court agreed with the plaintiff in that case that his common law negligence action was not an adequate remedy at state law because the doctrine of governmental immunity prevails against it. Therefore, it held that the plaintiff should be allowed to bring his claims directly under the North Carolina Constitution. This Court recognizes that state constitutional claims may be brought directly when immunity would prevent tort recovery. However, the court in *Craig* expressly declined to rule on the merits of that constitutional claim, noting that "this holding does not predetermine the likelihood that plaintiff will win other pretrial motions, defeat affir-

mative defenses, or ultimately succeed on the merits of his case." *Craig*, 678 S.E.2d at 355. In other words, the court held that sovereign immunity cannot bar direct constitutional claims without opining on whether Craig's claim was cognizable under the North Carolina Constitution.

 Although a *Corum* mechanism would theoretically be available to provide a private right of action through which Plaintiffs could vindicate Matthew's right to a sound basic education, North Carolina state case law does not currently provide a basis from which this Court could infer that a state court would perceive infringement of that state constitutional right from the facts of this case. Although Plaintiffs argue that *Craig* provides them a basis for relief under the right to a sound basic education, allowing a constitutional recovery on the basis of alleged sexual abuse would be an as-yet-unrecognized extension of the *Leandro* doctrine. Plaintiffs cite to no North Carolina case in which a teacher-student sexual relationship was held to constitute a violation of the student's right to a sound basic education. Nor can Plaintiffs establish that the School Board was required to provide additional resources to Matthew in the aftermath of the relationship. *See King v. Beaufort Cnty. Bd. of Educ.*, 364 N.C. 368, 704 S.E.2d 259 (2010) ("[W]e stress that a fundamental right to alternative education does not exist under the state constitution.").

Nothing in this Order should be read to minimize the impact of Ms. Rajput's actions. Rather, it should be read only to reflect the limited role of a federal court interpreting a state constitutional right. As the Fourth Circuit has noted, "a federal court should not create or expand a State's public policy [or] ... elbow its way into [a] controversy to render what may be an uncertain and ephemeral interpretation of state law." *Time Warner Entm't–Advance/Newhouse P'ship v. Carteret–Craven Elec. Membership Corp.*, 506 F.3d 304, 314 (4th Cir.2007). Plaintiffs would have this Court create a new right under the North Carolina Constitution. This the Court declines to do.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [DE 81] is GRANTED.