## DOE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[222 N.C. App. 359 (2012)]

JANE DOE, PLAINTIFF V. THE CHARLOTTE-MECKLENBURG BOARD OF EDUCATION AND RICHARD PRIODE, INDIVIDUALLY AND AS AN EMPLOYEE OF THE CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, DEFENDANTS

No. COA11-1466

(Filed 21 August 2012)

## 1. Appeal and Error—interlocutory order—governmental immunity—abuse of student alleged as constitutional claim

In an action that rose from sexual abuse of a student by a teacher in which North Carolina constitutional claims were raised, the trial court order denying defendant's motion to dismiss for failure to state a claim was interlocutory but appealable because it affected defendant's substantial right to government immunity. The fact that plaintiff asserted that certain of her claims were constitutional did not automatically mean that she stated valid constitutional claims or that defendant was not entitled to avoid liability for those claims, properly understood, on governmental immunity grounds.

## 2. Immunity—governmental—common law and constitutional claims

In an action against a school board arising from the sexual harassment of a student by a teacher which involved constitutional and common law claims, *Craig v. New Hanover Cty. Bd. of Ed.*, 363 N.C. 334, was misapprehended by the trial court. In denying defendant's motion to dismiss plaintiff's constitutional claims in reliance on *Craig*, the trial court appeared to have concluded that *Craig* contained two separate holdings instead of a single holding to the effect that a common law claim that is barred by the doctrine of governmental immunity is not an adequate substitute for a constitutionally based claim.

## 3. Constitutional Law—North Carolina—educational rights— sexual harassment by teacher

Allegations that a teacher sexually harassed a student did not state a claim for relief under N. C. Const. art I, § 15 and art IX, § 1. The educational rights guaranteed by those provisions have not been extended past the nature, extent, and quality of the educational opportunities made available in the public school system.

4. **Constitutional Law—North Carolina—Due Process—sexual harassment by teacher**

Assuming that N.C. Const. art. I, § 19 entitles plaintiff to an education free from abuse or physical harm, allegations in her complaint of sexual harassment by a teacher did not state a claim upon which relief could be recovered. Due Process is not implicated by the negligent act of an official causing unintended loss or injury to life, liberty, or property.

Judge STROUD dissenting.

Appeal by defendant Charlotte-Mecklenburg Board of Education from order entered 22 August 2011 by Judge F. Lane Williamson in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 April 2012.

*Essex Richards, P.A., by Edward G. Connette and T. Patrick Matus and Karro, Sellers & Langson, by Seth Langson, for plaintiff-appellee.*

*Parker, Poe, Adams & Bernstein L.L.P., by Anthony Fox and Benjamin Sullivan, for defendant-appellant the Charlotte-Mecklenburg Board of Education.*

*North Carolina Advocates for Justice, by David C. Pishko and Lauren Weinstein, amicus curiae.*

ERVIN, Judge.

Defendant Charlotte-Mecklenburg Board of Education appeals from an order denying its motion to dismiss Plaintiff's complaint for failing to state a claim upon which relief could be granted. In its brief, the Board contends that (1) its appeal, although interlocutory, is properly before this Court because the trial court's order amounted to a rejection of the Board's governmental immunity claim; (2) the Supreme Court did not hold in *Craig v. New Hanover Cty. Bd. Of Educ.*, 363 N.C. 334, 338-42, 678 S.E.2d 351, 354-57 (2009), that state constitutional claims may rest solely upon allegations of negligence; and (3) Plaintiff had not asserted viable state constitutional claims against the Board in her complaint. After careful consideration of the Board's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be reversed and that this case should be remanded to the Mecklenburg

**DOE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.**

[222 N.C. App. 359 (2012)]

County Superior Court for further proceedings not inconsistent with this opinion.

## I.  Factual Background

On or about 13 May 2011, Plaintiff Jane Doe filed a complaint seeking to recover damages from Defendants stemming from sexual abuse that she suffered at the hands of Defendant Richard Priode, her band teacher at South Mecklenburg High School. According to Plaintiff's complaint, Defendant Priode made sexual advances towards her and eventually induced her to engage in various types of sexual activity, including oral sex and vaginal intercourse, with him both on and off school grounds. Defendant Priode was later arrested, charged, and entered a plea of guilty to taking indecent liberties with a child as a result of his involvement with Plaintiff.

In her complaint, Plaintiff asserted claims against Defendant Board for negligent hiring, supervision, and retention; negligent infliction of emotional distress; and violation of Plaintiff's rights to an education and to proper educational opportunities as guaranteed by N.C. Const. art. I, § 15 and N.C. Const. art. IX, § 1, and her right to obtain a safe education as guaranteed by N.C. Const. art. I, § 19. According to Plaintiff, the Board should have recognized the signs that Defendant Priode posed a threat to her and taken action to prevent the sexual abuse which she suffered at his hands. More specifically, Plaintiff alleged, with respect to her constitutional claims, that:

40.  As a separate and distinct cause of action, Plaintiff sues the Defendants for violating her constitutional rights pursuant to North Carolina State Constitution in the following particulars:

a.  Violation of Article I[,] Section 15 on the grounds that the Defendant allowed the conduct as alleged in this complaint and that this conduct deprived the Plaintiff of her right to an education that is free from harm:

b.  Violation of Article IX[,] Section 1 in that the Plaintiff was denied educational opportunities free from physical harm or psychological abuse; and

c.  Violation of Article I[,] Section 19 in that the Plaintiff has been deprived of her liberty, interest and privilege in an education free from abuse or psychological harm as alleged in this complaint.

41. This constitutional claim for damages is pled as an alternative remedy, should the court find that sovereign immunity or governmental immunity in any way of its various forms exists and, if it does exist, in that event Plaintiff has no adequate remedy at law and asserts the constitutional violations pursuant to the laws of North Carolina.

On 27 June 2011, the Board filed a partial motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), in which it sought the dismissal of Plaintiff's constitutional claims on the grounds that Plaintiff's complaint failed to allege facts which tended to establish the Board's liability to Plaintiff for violating the various constitutional provisions cited in her complaint. On the same date, the Board filed a second partial motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and (2), in which it sought the dismissal of Plaintiff's negligent hiring, supervision, and retention and negligent infliction of emotional distress claims on the grounds that the Board "enjoy[ed] full governmental immunity[.]"

On 22 August 2011, the trial court entered an order granting the Board's motion to dismiss Plaintiff's claims for negligent hiring, supervision, and retention and negligent infliction of emotional distress, "since the Board ha[d] not waived immunity by the purchase of liability insurance." However, the trial court denied the Board's motion to dismiss Plaintiff's constitutional claims in reliance on *Craig*. After the trial court, at the Board's request, certified the order denying the Board's motion to dismiss Plaintiff's constitutional claims for immediate appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), the Board noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Appealability

[1] As an initial matter, we must determine whether the Board's appeal is properly before us. Although the Board acknowledges that the trial court's order is interlocutory in nature and that the trial court's order did not constitute "a final judgment as to one or more but fewer than all of the claims or parties" that was immediately appealable pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), it contends that the trial court's refusal to dismiss Plaintiff's constitutional claims affected the Board's substantial right to governmental immunity. We believe that the Board's argument has merit.

**DOE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.**

[222 N.C. App. 359 (2012)]

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (citation omitted), *r'hrg denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). As a general proposition, "there is no right of immediate appeal from interlocutory orders and judgments." *Travco Hotels v. Piedmont Natural Gas Co.*, 332 N.C. 288, 291, 420 S.E.2d 426, 428 (1992) (citation omitted).

> Nonetheless, in two instances a party is permitted to appeal interlocutory orders. First, a party is permitted to appeal from an interlocutory order when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment that there is no just reason to delay the appeal. Second, a party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits. Under either of these two circumstances, it is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal and our Court's responsibility to review those grounds.

*Bullard v. Tall House Bldg. Co.*, 196 N.C. App. 627, 637, 676 S.E.2d 96, 103 (2009) (citations and quotation marks omitted).

According to well-established North Carolina law, governmental immunity is an " 'immunity from suit rather than a mere defense to liability[.]' " *Craig*, 363 N.C. at 338, 678 S.E.2d at 354 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411, 425 (1985)) (emphasis omitted). For that reason, "[t]his Court has held that denial of dispositive motions such as motions to dismiss . . . that are grounded on governmental immunity affect a substantial right and are immediately appealable." *Mabrey v. Smith*, 144 N.C. App. 119, 121, 548 S.E.2d 183, 185 (citation omitted), *disc. review denied*, 354 N.C. 219, 554 S.E.2d 340 (2001); *see also Craig*, 363 N.C. at 337, 678 S.E.2d at 354 (stating that, although the "[d]enial of a summary judgment motion is interlocutory and ordinarily cannot be immediately appealed . . . the appeal [before the Court] is proper because the Board raises the complete defense of governmental immunity, and as such, denial of its summary judgment motion affects a substantial right"); *Meherrin Indian Tribe v. Lewis*, 197 N.C. App. 380, 385, 677 S.E.2d 203, 207 (2009) (recognizing that the

denial of a dismissal motion lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), based on a claim of sovereign or governmental immunity is immediately appealable because it affects a substantial right), *disc. review denied*, 363 N.C. 806, 690 S.E.2d 705 (2010). The decisions allowing the immediate appeal of decisions addressing the availability of sovereign or governmental immunity hinge upon the fact that, were " 'the case to be erroneously permitted to proceed to trial, immunity would be effectively lost.' " *Christmas v. Cabarrus Cty.*, 192 N.C. App. 227, 231, 664 S.E.2d 649, 652 (2008) (quoting *Slade v. Vernon*, 110 N.C. App. 422, 425, 429 S.E.2d 744, 746 (1993), *implicit overruling on other grounds recognized in Boyd v. Robeson Cty.*, 169 N.C. App. 460, 470, 621 S.E.2d 1, 7, *disc. review denied*, 359 N.C. 629, 615 S.E.2d 866 (2005)), *disc. review denied*, 363 N.C. 372, 678 S.E.2d 234 (2009).

Although Plaintiff acknowledges that, in the event that "the trial judge [had] denied the Board's motion to dismiss [P]laintiff's negligence claims based on governmental immunity, that order would have been appealable immediately," Plaintiff argues that, since *Craig* holds that governmental immunity is not a bar to constitutional claims such as those that Plaintiff has asserted in this case, the Board is not entitled to rely upon governmental immunity in response to Plaintiff's constitutional claims and that any decision to review the denial of the Board's dismissal motion on a "limited record" like that before the Court in this case would be tantamount to the unfair and prejudicial adoption of a heightened pleading standard. We do not find Defendant's argument persuasive.

The record before us in this case clearly reflects that the Board asserted governmental immunity in its responsive pleading and argued that Plaintiff was not entitled to overcome a governmental immunity bar by asserting constitutional claims that rested solely upon allegations that the Board acted negligently. The fact that the trial court rejected the Board's claim of governmental immunity means nothing more than that the trial court found that Plaintiff had stated one or more viable constitutional claims. Such a determination does not mean that the Board is not entitled to governmental immunity; instead, it means that the same determination must be made in order to both determine whether we are entitled to hear the Board's appeal on an interlocutory basis and ascertain whether Plaintiff has, in fact, stated a claim for relief against the Board on the basis of the constitutional provisions upon which she relies. Thus, we cannot determine the extent to which the Board is entitled to appeal the trial

**DOE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.**

[222 N.C. App. 359 (2012)]

court's order on an interlocutory basis without addressing the merits of its challenge to the trial court's determination that Plaintiff stated a claim for relief under the constitutional provisions upon which she relies. The mere fact that Plaintiff has asserted that certain of her claims are "constitutional" in nature does not automatically mean that she has stated one or more valid constitutional claims or that the Board is not entitled to avoid liability with respect to those claims, properly understood, on governmental immunity grounds. *Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000) (stating that, in addressing motions filed pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), a party's "[l]egal conclusions . . . are not entitled to a presumption of truth"). A failure to evaluate the validity of Plaintiff's constitutional claims would allow Plaintiff to simply re-label claims that would otherwise by barred on governmental immunity grounds as constitutional in nature, effectively circumventing the Board's right to rely on a governmental immunity bar. In other words, in the event that we were to hold that the "Board cannot immediately appeal, it will have to litigate [Plaintiff]'s negligence allegations," thereby forfeiting its substantial right to rely, in appropriate instances, on the doctrine of sovereign immunity in response to Plaintiff's claims. As a result, we conclude that the Board's appeal from the trial court's order is properly before this Court.

## B. Plaintiff's Constitutional Claims

Secondly, the Board contends that the trial court erred by denying its motion to dismiss Plaintiff's constitutional claims on the grounds that "[n]one of the constitutional provisions cited by [Plaintiff] can be violated by negligence alone." Put another way, the ultimate issue raised by the Board's appeal is whether Plaintiff has stated a claim for relief based upon the relevant provisions of the state constitution. After careful consideration, we conclude that this question must be answered in the negative.

## 1. Standard of Review

"We review a motion to dismiss for failure to state a claim *de novo*." *Bobbitt ex. rel. Bobbitt v. Eizenga*, ____ N.C. App. ____, ____, 715 S.E.2d 613, 615 (2011) (citation omitted). In making that determination, we must ascertain " 'whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted.' " *Farrell .v. Transylvania Cty. Bd. of Educ.*, 175 N.C. App. 689, 695, 625 S.E.2d 128, 133 (2006) (quoting *Harris v. NCNB Nat. Bank of North Carolina*, 85 N.C. App. 669, 670, 355 S.E.2d

838, 840 (1987)). In conducting the required analysis, we must "consider the allegations in the [plaintiff's] complaint [to be] true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if [the] plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim." *Id.* (citing *Hyde v. Abbott Laboratories., Inc.*, 123 N.C. App. 572, 575, 473 S.E.2d 680, 682, *disc. review denied*, 344 N.C. 734, 478 S.E.2d 5 (1996)).

> Dismissal is proper when one of the following three conditions is satisfied: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."

*Bobbitt,* ____ N.C. App. at ____, 715 S.E.2d at 615 (quoting *Guyton v. FM Lending Services, Inc.*, 199 N.C. App. 30, 33, 681 S.E.2d 465, 469 (2009) (citation and quotation marks omitted)).

### 2. Applicability of *Craig*

[2] In determining that Plaintiff had, in fact, adequately stated a claim for relief under the relevant provisions of the North Carolina Constitution, the trial court appears to have concluded that the allegations underlying the constitutional claims that Plaintiff has asserted here are identical to those at issue in *Craig* and that the Supreme Court held in *Craig* that such allegations sufficed to state a claim for relief pursuant to the constitutional provisions upon which Plaintiff relies. We believe that the trial court's decision, with which our dissenting colleague agrees, rests upon a misapprehension of the Supreme Court's decision in *Craig*.

In *Craig*, the plaintiff sought to obtain a damage recovery against the New Hanover County Board of Education based upon its failure to protect him from sexual abuse that he allegedly suffered at the hands of one of the defendant's employees. 363 N.C. at 335, 678 S.E.2d at 352. In his complaint, the plaintiff asserted various common law negligence claims against the defendant and also alleged that the defendant "deprived him of an education free from harm and psychological abuse" in violation of N.C. Const. art. I, §§ 15 & 19 and N.C. Const. art. IX, § 1. *Id.* After failing to persuade the trial court to grant summary judgment in its favor, the defendant appealed to this Court, which unanimously reversed the trial court's decision with respect to the plaintiff's common law claims on governmental immunity grounds. *Id.* at 335-36, 678 S.E.2d at 353. In addition, by a divided

**DOE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.**

[222 N.C. App. 359 (2012)]

vote, we reversed the trial court's decision with respect to the plaintiff's constitutional claims on the grounds that the "plaintiff's common law negligence claim [was] an adequate remedy at state law." *Id.* In other words, a majority of this Court held that, even though the plaintiff's common law negligence claims were clearly barred by the doctrine of governmental immunity, that fact did not render those claims "inadequate" for purposes of determining whether the plaintiff was entitled to assert alternative constitutionally-based claims. On appeal, the Supreme Court held that the "[p]laintiff's common law cause of action for negligence [did] not provide an adequate remedy at state law when governmental immunity [stood] as an absolute bar to [that] claim," so that the plaintiff could alternatively advance "his colorable claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim." *Id.* at 340, 678 S.E.2d at 355.

In denying the Board's motion to dismiss Plaintiff's constitutional claims in reliance on *Craig*, the trial court appears to have concluded that *Craig* contained two separate holdings, one of which relates to the substantive merits of the plaintiff's constitutional claims, instead of a single holding to the effect that a common law claim which is barred by the doctrine of governmental immunity is not an adequate substitute for a constitutionally-based claim. The fundamental problem with the trial court's logic is that the Supreme Court simply declined to consider the substantive viability of the state constitutional claims that the plaintiff attempted to assert pursuant to N.C. Const. art. I, §§ 15 & 19 and N.C. Const. art. IX, § 1, in *Craig*, explicitly stating that its decision did not "predetermine the likelihood that [the] [p]laintiff [would] win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of his case" and that its holding "simply ensure[d] that an adequate remedy must provide the possibility of relief under the circumstances." *Id.* In other words, the Supreme Court simply held in *Craig* that the existence of common law claims that were barred by the doctrine of sovereign or governmental immunity did not operate to bar the plaintiff from attempting to assert any constitutional claims that he might have otherwise had against the defendant while expressly declining to address the extent to which his constitutional claims had substantive merit. *Fothergill v. Jones Cty. Bd. of Educ.*, ____ F. Supp. 2d ____, ____, 2012 WL 202777, *3, 2012 U.S. Dist. LEXIS 7570, *8 (E.D.N.C. Jan. 8, 2012) (holding that "the court in *Craig* expressly declined to rule on the merits of that constitutional claim . . . ."); *Collum v. Charlotte-Mecklenburg Bd. of Educ.*, 2010 WL 702462, *2, 2010 U.S. Dist. LEXIS 15824, *7 (W.D.N.C.

Feb. 23, 2010) (holding that the Supreme Court in *Craig* "simply stated that the plaintiff in that case was not precluded from asserting the state constitutional claim, without reaching the merits of that claim").[1] As a result, contrary to the conclusion reached by the trial court and in the separate opinion submitted by our dissenting colleague, *Craig* does not control the substantive issue before us in this case, resulting in the necessity for us to independently determine whether Plaintiff has stated a claim for which "relief can be granted under some [constitutionally-based] legal theory." *Bobbitt*, ____ N.C. App. at ____, 715 S.E.2d at 615 (citation and quotation marks omitted).[2]

In seeking to establish that the present case is factually and procedurally indistinguishable from *Craig* and that we are bound by what she perceives to be the holding in that case, *State v. Gillis*, 158 N.C. App. 48, 53, 580 S.E.2d 32, 36 (stating that "[t]his Court is bound by precedent of the North Carolina Supreme Court"), *disc. review denied*, 357 N.C. 508, 587 S.E.2d 887 (2003), our dissenting colleague advances a number of different arguments. As an initial matter, our dissenting colleague contends that the only "dispositive difference between this case and *Craig* is that *Craig* was decided on a motion for summary judgment while here the trial court ruled upon [D]efendant[s] . . . 12(b)(6) motion." Although we agree with our dissenting colleague that the factual allegations relied upon in *Craig* and those

1. Admittedly, the Supreme Court made several references to the "colorable" claims asserted by the plaintiff in its opinion in *Craig*, a fact which seems to lie at the heart of our dissenting colleague's belief that *Craig* implicitly addresses substantive constitutional issues in addition to determining whether the existence of a common law claim that is clearly barred by governmental immunity precludes the assertion of a constitutionally-based claim. However, the absence of any substantive analysis of the viability of the plaintiff's claims under the relevant provisions of the North Carolina constitution coupled with the Supreme Court's explicit statement that its decision did not "predetermine the likelihood that [the] [p]laintiff [would] win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of his case," *Craig*, 363 N.C. at 340, 678 S.E.2d at 355, indicates that the Supreme Court did not intend these references to the plaintiff's "colorable" claims to be tantamount to a holding that the allegations in the plaintiff's complaint stated a valid claim for relief. In order to reach a contrary determination, we would have to conclude that the Supreme Court recognized a constitutionally-based liability claim sounding primarily in negligence without engaging in any analysis of the extent to which that outcome was appropriate, an outcome which we believe to be unlikely.

2. Although Plaintiff argues that the effect of our decision is to impose a heightened pleading requirement upon claims such as those that she is attempting to assert here, the ultimate issue that we must address is, in reality, the exact contours of the substantive rights created by the constitutional provisions upon which Plaintiff relies rather than the manner in which claims arising under those constitutional provisions should be pled.

relied upon in the present case are "substantially the same" and that this difference in the procedural context between the two cases does not justify a different outcome with respect to the merits of the two claims, that fact does not have any real bearing upon the proper resolution of the underlying dispute at issue here, which is whether *Craig* contains a single holding relating to the extent to which the existence of a common law claim that is barred by the doctrine of governmental immunity precludes the assertion of a constitutionally-based claim or whether *Craig* implicitly addresses substantive constitutional issues as well. Secondly, in concluding that *Craig* contains an implicit substantive constitutional holding, our dissenting colleague emphasizes the fact that the Supreme Court in *Craig* reversed our decision to the effect that summary judgment should have been granted in favor of the defendant with respect to the plaintiff's constitutional claims. However, this argument overlooks the fact that we had held that summary judgment should have been awarded in favor of the defendant on the grounds that the availability of governmental immunity as an absolute bar to the plaintiff's common law claims did not suffice to render those common law remedies inadequate for the purpose of determining whether a constitutionally-based claim arising out of the same alleged conduct should be recognized, not that the substantive allegations in the plaintiff's complaint stated a valid claim for relief under the relevant constitutional provisions or that summary judgment could never be granted in that case under any theory. Thirdly, the fact that the Supreme Court, by essentially rejecting the defendant's attempt to obtain an appellate decision which, in essence, would have recognized a governmental immunity defense to constitutionally-based claims which bore a resemblance to recognized common law claims, provided North Carolina trial courts with "jurisdiction to adjudicate plaintiff's claims fully," says nothing about the extent, if any, to which the Supreme Court implicitly held that the allegations set out in the complaints at issue in either this case or *Craig* stated a viable claim for relief based upon the relevant constitutional provisions. As a result, given that none of the arguments advanced by our dissenting colleague in support of the trial court's interpretation of *Craig* strike us as persuasive, we will proceed to determine whether the allegations of Plaintiff's complaint do, in fact, state valid claims for relief predicated upon the relevant constitutional provisions.

## 3.  N.C. Const. art. I, § 15 and N.C. Const. art. IX, § 1

[3] Initially, Plaintiff contends that the Board's negligent acts and omissions violated her "right to an education that [was] free from harm" and "psychological abuse" as guaranteed by N.C. Const. art. I, § 15 and N.C. Const. art. IX, § 1. N.C. Const. art. I, § 15 provides that "[t]he people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." Similarly, N.C. Const. art. IX, § 1 states that "[r]eligion, morality, and knowledge being necessary to good government and the happiness of mankind, schools, libraries, and the means of education shall forever be encouraged." In giving content to these constitutional guarantees, the Supreme Court has held that North Carolina students are entitled to receive an education that satisfies certain qualitative standards. *Leandro v. State of North Carolina*, 346 N.C. 336, 345, 488 S.E.2d 249, 254 (1997). As a result, the Supreme Court has recognized that a student is entitled to receive "a sound basic education in our public schools," including:

> (1) sufficient ability to read, write, and speak the English language and a sufficient knowledge of fundamental mathematics and physical science to enable the student to function in a complex and rapidly changing society; (2) sufficient fundamental knowledge of geography, history, and basic economic and political systems to enable the student to make informed choices with regard to issues that affect the student personally or affect the student's community, state, and nation; (3) sufficient academic and vocational skills to enable the student to successfully engage in post-secondary education or vocational training; and (4) sufficient academic and vocational skills to enable the student to compete on an equal basis with others in further formal education or gainful employment in contemporary society.

*Id.* at 347, 488 S.E.2d at 255.

To date, we are not aware of any decision by either this Court or the Supreme Court which has extended the educational rights guaranteed by N.C. Const. art. I, § 15 and N.C. Const. art. IX, § 1, beyond matters that directly relate to the nature, extent, and quality of the educational opportunities made available to students in the public school system. Although the serious wrongfulness inherent in the actions in which Defendant Priode allegedly engaged should not be minimized in any way, we are unable to see how the allegations set out in Plaintiff's complaint state a claim for violating these constitu-

tional provisions. Put another way, we are unable to discern from either the language of the relevant constitutional provisions or the reported decisions construing these provisions that North Carolina public school students have a state constitutional right to recover damages from local boards of education for injuries sustained as the result of a negligent failure to remain aware of and supervise the conduct of public school employees. As a result, Plaintiff's complaint "on its face reveals the absence of facts sufficient to make a good claim" under N.C. Const. art. I, § 15 or N.C. Const. art. IX, § 1, such that Plaintiff has failed to state a claim based on those constitutional provisions upon which relief may be granted. *Bobbitt*, ____ N.C. App. at ____, 715 S.E.2d at 615 (citation and quotation marks omitted).

### 4. N.C. Const. art. I, § 19

**[4]** Secondly, Plaintiff asserts that the Board "deprived" her of "her liberty, interest and privilege in an education free from abuse or psychological harm" as guaranteed by N.C. Const. art. I, § 19, which provides that:

> [n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

According to well-established North Carolina law, N.C. Const. art. I, § 19 "guarantees both due process rights and equal protection under the law" and has been interpreted as being similar to the due process clause of the Fourteenth Amendment to the Federal Constitution. *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004). As a general proposition, due process "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663, 88 L. Ed. 2d 662, 666 (1986) (emphasis omitted) (holding that the negligent act of a deputy sheriff which caused injury to the plaintiff did not support a finding of liability based upon the due process clause, so that the trial court correctly granted summary judgment in defendant's favor with respect to a due process claim that the plaintiff had asserted pursuant to 42 U.S.C. § 1983). "Where a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is constitutionally required.' " *Id.* at 333, 106 S. Ct. at 666, 88 L. Ed. 2d at 669 (emphasis omitted)

(quoting *Parratt v. Taylor*, 451 U.S. 527, 548, 101 S. Ct. 1908, 1919, 68 L. Ed. 2d 420, 437 (1981) (Powell, J., concurring in result)).[3] As a result, assuming, without in any way deciding, that N.C. Const. art. I, § 19 entitles Plaintiff to an education free from abuse or physical harm, we do not believe that she is entitled to a damage recovery against the Board based upon the negligent conduct alleged in her complaint.[4] As a result, we are compelled to conclude that "no law supports [Plaintiff's] claim" for relief based upon N.C. Const. art. I, § 19, *Bobbitt*, ____ N.C. App. at ____, 715 S.E.2d at 615 (citation and quotation marks omitted), so that her complaint fails to state a claim for relief based upon that constitutional provision as well.

### III.  Conclusion

Thus, for the' reasons set forth above, we hold that the Board's appeal from the trial court's order denying its motion to dismiss Plaintiff's constitutional claims is properly before this Court and that Plaintiff has failed to state claims arising under various provisions of the North Carolina Constitution for which relief may be granted.[5] As a result, the trial court's order should be, and hereby is, reversed and this case should be, and hereby is, remanded to the Mecklenburg

3. As Plaintiff correctly notes, decisions construing the due process clause of the United States constitution are not dispositive of the proper interpretation of the "law of the land" clause of N.C. Const. art. I, § 19. *Bacon v. Lee*, 353 N.C. 696, 721, 549 S.E.2d 840, 856-57 (2001). However, we have not found any authority tending to suggest that the degree of inattention to Plaintiff's safety alleged to have occurred in this case rises to the level of a violation of Plaintiff's rights under N.C. Const. art. I, § 19 and do not believe that deficient supervision of the type alleged to have occurred here suffices to support a determination that Plaintiff is entitled to recover damages from the Board under the "law of the land" clause.

4. Our dissenting colleague does not appear to disagree with this understanding of the relevant federal decisions.

5. The fact that Plaintiff has failed to state a claim for relief pursuant to the constitutional provisions upon which she relies does not mean that she lacks an adequate remedy. "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Craig*, 363 N.C. at 339-40, 678 S.E.2d at 355. As the record clearly reflects, Plaintiff had an opportunity to present her claims to the Court and obtain a determination as to whether those claims had any substantive merit without having to overcome any sovereign or governmental immunity bar. However, since Plaintiff has failed to state viable constitutional claims against the Board, such claims, to the extent that they have any viability under the common law, are barred by governmental immunity. Although our dissenting colleague disagrees with this assertion and argues that the plaintiff in *Craig* had no more opportunity to present his claims than Plaintiff has had in this case, we do not find this argument persuasive given that it rests solely upon her belief that *Craig* contains a substantive constitutional holding, an argument which we have not found persuasive for the reasons set forth above.

County Superior Court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

JUDGE ROBERT C. HUNTER concurs.

JUDGE STROUD dissents by separate opinion.

STROUD, Judge dissenting.

Although I agree that defendant Board's interlocutory appeal affects a substantial right, I disagree that the trial court's order should be reversed and remanded. Based upon *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 678 S.E.2d 351 (2009), I believe this Court is required to affirm the order of the trial court denying defendants' motion to dismiss, and therefore I respectfully dissent.

The majority noted correctly that "the ultimate issue raised by the Board's appeal is whether Plaintiff has stated a claim for relief based upon the relevant provisions of the state constitution[,]" but answers this question "in the negative." The majority relies upon its analysis of *Craig*, determining

> that the Supreme Court simply declined to consider the substantive viability of the state constitutional claims that the plaintiff attempted to assert pursuant to N.C. Const. art. I, §§ 15 & 19 and N.C. Const. art. IX, § 1, in *Craig*, explicitly stating that its decision did not "predetermine the likelihood that [the] [p]laintiff [would] win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of his case" and that its holding "simply ensure[d] that an adequate remedy must provide the possibility of relief under the circumstances." *Id.*

Although it is certainly true that the Supreme Court's decision in *Craig* did not mean that the plaintiff in that case would ultimately prevail, the Supreme Court did "affirm the trial court's denial of defendant's motion for summary judgment[,]" thus permitting the plaintiff to proceed with his "colorable constitutional claims" based upon allegations of negligence. *Id.* at 340-42, 678 S.E.2d at 355-57. If the Supreme Court did not consider *Craig*'s "colorable constitutional claims" sufficiently viable to survive dismissal at the summary judgment stage, it would have reversed the trial court's order denying the defendant's motion for summary judgment since the constitutional claims were the only claims being considered in the *Craig* appeal. *See id.* at 336-

42, 678 S.E.2d at 353-57. There was no dispute that the "negligence" claims were barred by governmental immunity, either in *Craig* or in this case, thus leaving only the constitutional claims for consideration. *See id.* at 338, 678 S.E.2d at 354. The difficulty with *Craig* is that the opinion provides no meaningful guidance on just what a "colorable constitutional claim[]" based upon negligence is, *id.*, 363 N.C. at 334-42, 678 S.E.2d at 351-57, but whatever it may be, if one existed in *Craig*, the same claim exists in this case, and for that reason the trial court properly denied defendant Board's motion to dismiss.

### I. "Colorable Constitutional Claims"

The Supreme Court in *Craig* referred to the plaintiff's claims as "colorable constitutional claims." *Id.* at 342, 678 S.E.2d at 357. Defendant Board argues that "colorable constitutional claims[,]" *id.*, require something more than just an ordinary negligence claim which has been given an alternate title as a "constitutional claim" with some sections of the North Carolina State Constitution cited in support, but no factual allegations which would actually make the claim something more than an ordinary negligence claim. Allowing such a claim to proceed could, as a practical matter, essentially eliminate sovereign or governmental immunity in most, if not all, ordinary negligence cases. I have therefore examined *Craig*, and its predecessor *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. 985, 121 L.Ed. 2d 431 (1992), to see if they support defendant Board's argument that "colorable constitutional claims[,]" *Craig*, 363 N.C. at 342, 678 S.E.2d at 357, which may survive a motion to dismiss, require more than allegations of negligence coupled with the allegation that the defendant's actions violate the North Carolina State Constitution.

### 1. *Craig's* Reliance on *Corum*

I can find no definition of "colorable claim" in the context of a constitutional claim in our case law, but Black's Law Dictionary defines it as "[a] claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law[.]" Black's Law Dictionary 282 (9th ed. 2009). As Black's definition reveals nothing about what a "colorable constitutional claim[]" is, *Craig*, 363 N.C. at 342, 678 S.E.2d at 357; Black's Law Dictionary 282, I have sought guidance in *Corum*. In contrast to *Craig*, in *Corum*, the case upon which *Craig* relied, the plaintiff, formerly employed as a dean at Appalachian State University, alleged the "defendants discharged him from his deanship in retaliation for his speaking freely about the

moving of the Appalachian Collection[,]" in violation of his free speech rights, including those under "North Carolina Constitution Article I, Sections 14, 19, and 35[.]" *Corum*, 330 N.C. at 766-70, 413 S.E.2d at 280-82; *see Craig*, 363 N.C. at 338-42, 678 S.E.2d at 354-57. The Supreme Court determined that

> our common law guarantees plaintiff a direct action under the State Constitution for alleged violations of his constitutional freedom of speech rights. We conclude that plaintiff does have a direct cause of action under the State Constitution against defendant Durham in his official capacity for alleged violations of plaintiff's free speech rights.

*Corum*, 330 N.C. at 783, 413 S.E.2d at 290 (citation omitted). Thus, in *Corum*, the constitutional claim was based upon specific factual allegations of an intentional act of the defendant alleged to be a violation of a constitutional right, the right to freedom of speech. *See id.* at 770, 413 S.E.2d at 282.

Yet *Corum* does not mention the concept of a "colorable claim." *See id.*, 330 N.C. 761, 413 S.E.2d 276. In addition, the *Corum* Court cited ten cases in support of its statement that

> authorities in North Carolina are consistent with the decisions of the United States Supreme Court and decisions of other state supreme courts to the effect that officials and employees of the State acting in their official capacity are subject to direct causes of action by plaintiffs whose constitutional rights have been violated[;]

none of these ten cases address negligence claims and none define a "colorable claim." *Id.* at 783-84, 413 S.E.2d at 290.

2. *Craig*'s Analysis

Turning back to *Craig*, I have been unable to discern any factual allegations which would establish that the plaintiff's constitutional claim was a "colorable" claim based upon anything other than the exact same allegations which supported the negligence claims. *See Craig*, 363 N.C. 334, 678 S.E.2d 351. Legally, *Craig*'s analysis and holding relied specifically upon *Corum*. *See Craig* at 342, 678 S.E.2d at 356-57 ("In sum, we hold that plaintiff's common law negligence claim is not an adequate remedy at state law because it is entirely precluded by the application of the doctrine of sovereign immunity. To hold otherwise would be contrary to our opinion in *Corum* and inconsistent with the spirit of our long-standing emphasis on ensuring

redress for every constitutional injury." (quotation marks omitted)). The *Craig* Court also noted that

> our holding here is likewise consistent with the spirit of our reasoning in *Sale v. State Highway & Public Works Commission,* 242 N.C. 612, 89 S.E.2d 290 (1955), and *Midgett v. North Carolina State Highway Commission,* 260 N.C. 241, 132 S.E.2d 599 (1963), *overruled on other grounds by Lea Co. v. North Carolina Board of Transportation,* 308 N.C. 603, 616, 304 S.E.2d 164, 174 (1983).

*Id.* at 341, 678 S.E.2d at 356. Both *Sale* and *Midgett* dealt with the taking of property for public use. *See Midgett,* 260 N.C. 241, 132 S.E.2d 599; *Sale,* 242 N.C. 612, 89 S.E.2d 290. Neither *Sale* nor *Midgett* provides any guidance as to the identification of a "colorable" constitutional claim in the context of negligence. *See Midgett,* 260 N.C. 241, 132 S.E.2d 599; *Sale,* 242 N.C. 612, 89 S.E.2d 290.

As to the factual allegations, in *Craig,* footnote four states that as to his constitutional claim the plaintiff alleged:

> The constitutional claim for damages is plead [sic] as an alternative remedy, should the court find that sovereign immunity or governmental immunity in any of its various forms exists and, if it does exist, which the plaintiffs deny, then, in that event, plaintiffs have no adequate remedy at law and assert the constitutional violations pursuant to the laws of North Carolina.

*Id.* at 340 n.4, 678 S.E.2d at 355 n.4 (quotation marks omitted). It appears that no other facts or circumstances other than those of negligence were alleged which would lead to the conclusion that the plaintiff had made "colorable constitutional claims." *See id.,* 363 N.C. at 334-42, 678 S.E.2d at 351-57. Although *Craig* did not explain what a "colorable constitutional claim[]" requires, *id.,* 363 N.C. at 334-42, 678 S.E.2d at 351-57, I note that in other cases, claims which have been treated as constitutional have truly been grounded in facts which demonstrate a violation of a constitutional right, and not mere negligence claims to which the heading "constitutional" has been appended. *See, e.g., Sanders v. State Personnel Com'n,* 183 N.C. App. 15, 644 S.E.2d 10, *disc. review denied,* 361 N.C. 696, 652 S.E.2d 653 (2007).

3. Federal Courts' Approach

Given the lack of guidance in North Carolina cases as to a "colorable constitutional claim[,]" *Craig,* 363 N.C. at 342, 678 S.E.2d at 357, based upon allegations of negligence, I have reviewed federal cases addressing this issue. I find the United States Supreme Court's

treatment of governmental immunity in cases which allege constitutional violations based upon negligent conduct to be instructive, as the Court has determined that a mere negligence claim is not transformed into a constitutional claim merely by pleading it as such. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 88 L.Ed. 2d 662 (1986). In *Daniels*, the United States Supreme Court considered the personal injury claim of a prisoner who alleged he was injured when he slipped and fell on a pillow negligently left on the stairs by a deputy. *Id.* at 328, 88 L.Ed. 2d at 666. The Court noted that "in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim." *Id.* at 330, 88 L.Ed. 2d at 667. The Court continued,

> The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property. E.g., Davidson v New Orleans, 96 US 97, 24 L Ed 616 (1878) (assessment of real estate); Rochin v California, 342 U.S. 165, 96 L Ed 183, 72 S Ct 205 (1952) (stomach pumping); Bell v Burson, 402 US 535, 29 L Ed 2d 90, 91 S Ct 1586 (1971) (suspension of driver's license); Ingraham v Wright, 430 US 651, 51 L Ed 2d 711, 97 S Ct 140, (1977) (paddling student); Hudson v Palmer, supra (intentional destruction of inmate's property). No decision of this Court before Parratt supported the view that negligent conduct by a state official, even though causing injury, constitutes a deprivation under the Due Process Clause. This history reflects the traditional and commonsense notion that the Due Process Clause, like its forebear in the Magna Carta, see Corwin, The Doctrine of Due Process of Law Before the Civil War, 24 Harv L Rev 366, 368 (1911), was " 'intended to secure the individual from the arbitrary exercise of the powers of government,' " Hurtado v. California, 110 US 516, 527, 28 L Ed 232, 4 S Ct 111 (1884) (quoting Bank of Columbia v Okely, 4 Wheat 235, 244, 4 L Ed 559 (1819)). See also Wolff v McDonnell, 418 US 539, 558, 41 L Ed 2d 935, 94 S Ct 2963 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government, Dent v West Virginia, 129 US 114, 123 [32 L Ed 623, 9 S Ct 231] (1889)"); Parratt, supra, at 549, 68 L Ed 2d 420, 101 S Ct 1908 (POWELL, J., concurring in result). By requiring the government to follow appropriate procedures when its agents decide to "deprive any

person of life, liberty, or property," the Due Process Clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of the procedures used to implement them, e.g., Rochin, supra, it serves to prevent governmental power from being "used for purposes of oppression," Murray's Lessee v Hoboken Land & Improvement Co., 18 How 272, 277, 15 L Ed 372 (1856) (discussing Due Process Clause of Fifth Amendment).

We think that the actions of prison custodians in leaving a pillow on the prison stairs, or mislaying an inmate's property, are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

*Id.* at 331-32, 88 L.Ed. 2d at 668.

Although the distinction between deliberate conduct and negligent conduct is not always obvious, the United States Court of Appeals, Fourth Circuit, has determined that there must be some element of intent, and more than negligence, for a constitutional claim to survive immunity. *See Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006). In *Lovelace*, the Fourth Circuit Court vacated summary judgment in favor of the defendants because there was a genuine issue as to the plaintiff's allegations that the defendant's actions were intentional; the Court noted:

The district court extended the analysis in *Daniels* and *Pink* to Lovelace's First Amendment free exercise claim, reasoning that the operative word "prohibit" in the First Amendment likewise connotes a "conscious act" rather than a merely negligent one. J.A. 171. Accordingly, the district court held that negligent interference with free exercise rights is not actionable under § 1983. We agree and hold that negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause. *Accord Lewis v. Mitchell*, 416 F.Supp.2d 935, 942–44 (S.D.Cal.2005); *Shaheed*, 885 F.Supp. at 868. Lovelace must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.

Although the district court imposed the proper state-of-mind requirement, it partially erred in finding that the defendants'

DOE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[222 N.C. App. 359 (2012)]

actions "resulted from negligence and not from intentional action." J.A. 171. The court correctly assessed the evidence against Shinault and Lee (in their individual capacities), but it underestimated the strength of the evidence against Lester. The facts, taken in the light most favorable to Lovelace, raise a genuine dispute whether Lester acted intentionally in depriving Lovelace of his free exercise rights. For this reason, summary judgment in favor of Lester on the First Amendment claim was error.

*Id.* at 201-02.

The Fourth Circuit has also noted that the rationale stated in *Daniels*, which arose under the 14th Amendment's Due Process Clause, has been applied in cases arising under other constitutional provisions. *Id.* at 201; *see Daniels*, 474 U.S. at 331-32, 88 L.Ed. 2d at 668. The Fourth Circuit stated in *Pink v. Lester*,

> *Daniels'* rejection of a theory of actionable negligence under the Due Process Clause is consistent with Supreme Court cases interpreting other provisions of the Constitution. For instance, *Estelle v. Gamble* held that only conduct rising to the level of "deliberate indifference" constitutes "infliction" of cruel and unusual punishment for purposes of the Eighth Amendment. 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Similarly, *Arlington Heights v. Metropolitan Housing Dev. Corp.* requires discriminatory purpose in order to establish a "denial" of Equal Protection. 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

> The language and the purpose of the Due Process Clause thus restrict violations thereof to official conduct that entails some measure of deliberateness. Absent such limitation, the Fourteenth Amendment would be demeaned, and federal courts would adjudicate claims that lacked connection to federal law. In our system of governance, the Constitution is revered but not ubiquitous, and federal courts sit as courts of limited jurisdiction. Thus, as *Daniels* underscores, not all undesirable behavior by state actors is unconstitutional. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States').

*Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Thus, in my view, the federal courts' requirement of some element of intent or deliberate indif-

ference in constitutional claims, *see, e.g., Lovelace*, 472 F.3d at 201-02, at the very least, should be necessary for a negligence-based "colorable constitutional claim[,]" *Craig*, 363 N.C. at 342, 678 S.E.2d at 357, under North Carolina law as well, but I also recognize that *Craig* does not appear to impose such a requirement. *See id.*, 363 N.C. 334, 678 S.E.2d 351.

## II. Interpretations of *Craig*

The trial court, the majority, and I in this dissent all agree that *Craig* is the controlling case; unfortunately, we disagree on what it means and its application to this case. I will therefore attempt to address our areas of disagreement. The majority summarized,

> In *Craig*, the plaintiff sought to obtain a damage recovery against the New Hanover County Board of Education based upon its failure to protect him from sexual abuse that he allegedly suffered at the hands of one of the defendant's employees. 363 N.C. at 335, 678 S.E.2d at 352. In his complaint, the plaintiff asserted various common law negligence claims against the defendant and also alleged that the defendant "deprived him of an education free from harm and psychological abuse" in violation of N.C. Const. art. I, §§ 15 & 19 and N.C. Const. art. IX, § 1. *Id.*

"The Board moved for summary judgment" which the trial court subsequently denied; the Board appealed. *Id.* at 335, 678 S.E.2d at 352-53. This Court issued an opinion by a divided panel as to the plaintiff's constitutional claims. *Id.* at 336, 678 S.E.2d at 353. The Supreme Court granted certiorari to consider plaintiff's constitutional claims, noting that this Court's

> majority concluded that plaintiff's common law negligence claim is an adequate remedy at state law, and thus, the constitutional claims are barred. The dissenting opinion contended that plaintiff's negligence claim cannot be an adequate state remedy since governmental immunity completely defeats the claim. By an order dated 6 March 2008, we granted certiorari to review the Court of Appeals decision only as the issue raised in the dissenting opinion.

*Id.* (citation and quotation marks omitted).

Before the Supreme Court the

> [p]laintiff argue[d] that his common law negligence claim [wa]s not an adequate remedy at state law because the doc-

trine of governmental immunity prevails against it. Consequently, he assert[ed] that per this Court's decision in *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992), he should be allowed to bring claims directly under our State Constitution that will not be susceptible to an immunity defense.

*Id.* at 338, 678 S.E.2d at 354.

The Supreme Court noted only one specific allegation made by the plaintiff which mentions a constitutional claim:

The constitutional claim for damages is plead [sic] as an alternative remedy, should the court find that sovereign immunity or governmental immunity in any of its various forms exists and, if it does exist, which the plaintiffs deny, then, in that event, plaintiffs have no adequate remedy at law and assert the constitutional violations pursuant to the laws of North Carolina.

*Id.* at 340 n.4, 678 S.E.2d at 355 n.4 (quotation marks omitted). No other facts or circumstances were alleged or forecast which could support the conclusion that the plaintiff had made a "colorable constitutional claim[]." *See id.* at 334-42, 678 S.E.2d at 351-57. Nonetheless, the Supreme Court held "that plaintiff's common law negligence claim is not an adequate remedy at state law because it is entirely precluded by the application of the doctrine of sovereign immunity." *Id.* at 342, 678 S.E.2d at 356-57 (quotation marks omitted). The Court explained that the

[p]laintiff's remedy cannot be said to be adequate by any realistic measure. Indeed, to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim. Under the facts averred by plaintiff here, the doctrine of sovereign immunity precludes such opportunity for his common law negligence claim because the defendant Board of Education's excess liability insurance policy excluded coverage for the negligent acts alleged. Plaintiff's common law cause of action for negligence does not provide an adequate remedy at state law when governmental immunity stands as an absolute bar to such a claim. But as we held in *Corum*, plaintiff may move forward in the alternative, bringing his colorable

claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim.

*Id.* at 339-40, 678 S.E.2d at 355 (footnote omitted).

In *Craig*, the plaintiff alleged he was sexually assaulted at school. 363 N.C. at 335-36, 678 S.E.2d at 352-53. Here too, the plaintiff's complaint alleges sexual misconduct at school. In *Craig*,

[t]he first [claim] was based on common law negligence. His other claims asserted that the Board deprived him of an education free from harm and psychological abuse, thereby violating three separate provisions of the North Carolina State Constitution: Article I, Section 15 (right to the privilege of education); Article I, Section 19 (no deprivation of a liberty interest or privilege but by the law of the land); and Article IX, Section 1 (schools and means of education shall be encouraged).

*Id.* at 335, 678 S.E.2d at 352. Here too, plaintiff brought negligence-based claims against her school board based upon allegations of negligent hiring, supervision, and retention and negligent infliction of emotional distress. Plaintiff here also brought causes of action under the exact same three constitutional provisions as the plaintiff in *Craig. See id.* In *Craig*, the plaintiff's constitutional claims were based on the same facts as the negligence claims without any additional allegations, as was specifically noted in *Craig's* holding. *See id.*, 363 N.C. at 340, 678 S.E.2d at 355 ("But as we held in *Corum*, plaintiff may move forward in the alternative, bringing his colorable claims directly under our State Constitution *based on the same facts that formed the basis for his common law negligence claim.*" (emphasis added)). Here too, plaintiff makes no factual allegations beyond those made in her negligence-based claims.

In *Craig*, the Supreme Court addressed the question of "whether plaintiff's common law negligence claim, which will ultimately be defeated by governmental immunity because of its exclusion from defendant Board of Education's insurance coverage, provides an adequate remedy at state law[;]" and the Supreme Court held "that it does not and that plaintiff may therefore bring his colorable claims directly under the North Carolina Constitution." *Id.* at 352, 678 S.E.2d at 335. The Supreme Court thus "affirm[ed] the trial court's denial of defendant's motion for summary judgment on plaintiff's direct colorable constitutional claims." *Id.* at 342, 678 S.E.2d at 357. Accordingly, I believe this Court is required here to also "affirm the trial court's

denial of defendants' motion" to dismiss as I am unable to distinguish Craig from this case in any meaningful way. *Id.*

1. Motion for Summary Judgment Versus 12(b)(6) Motion

The only potentially dispositive difference between this case and *Craig* is that *Craig* was decided on a motion for summary judgment while here the trial court ruled upon defendant Charlotte-Mecklenburg Board of Education's ("Board") 12(b)(6) motion. *See id.* A motion to dismiss is determined upon a different standard than a motion for summary judgment. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (stating standard as "[f]ailure to state a claim upon which relief can be granted"), 56(c) (2011) (noting that a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law"). Considering these different standards, the fact that the Supreme Court found that the allegations in *Craig* were sufficient to survive defendant's motion for summary judgment necessarily means it found such allegations would survive a 12(b)(6) motion. *See Craig*, 363 N.C. 334, 678 S.E.2d 351; *see also* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), 56(c). After all, if the plaintiff had "fail[ed] to state a claim upon which relief [could] be granted" then the defendant necessarily would be "entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), 56(c).

In addition, even though *Craig* was decided at the summary judgment stage, when the Court may consider factual allegations beyond the pleadings, *see* N.C. Gen. Stat. § 1A-1, Rule 56(c), the *Craig* opinion is not based upon any factual allegations of this type. *See Craig*, 363 N.C. 334, 678 S.E.2d 351. The allegations upon which the Supreme Court relied in *Craig* appear to be solely from the complaint and are substantially the same as in this case. *See id.* As the Supreme Court determined that the plaintiff's allegations in *Craig* were adequate to survive summary judgment under Rule 56(c), I believe we must conclude that these same claims based upon such similar facts must also survive defendant Board's Rule 12(b)(6) motion to dismiss. *See id.; see also* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), 56(c).

2. Merits of the Plaintiff's Case in *Craig*

The majority's decision seems to rely primarily upon language in *Craig* which acknowledges that although the plaintiff had brought a "colorable constitutional claim[]" which was not barred by govern-

mental immunity, the plaintiff in *Craig* may not ultimately prevail in his claim. *Craig*, 363 N.C. at 340-42, 678 S.E.2d at 355-57. The majority states,

> The fundamental problem with the trial court's logic is that the Supreme Court simply declined to consider the substantive viability of the state constitutional claims that the plaintiff attempted to assert pursuant to N.C. Const. art. I, §§ 15 & 19 and N.C. Const. art. IX, § 1, in *Craig*, explicitly stating that its decision did not "predetermine the likelihood that [the] [p]laintiff [would] win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of his case" and that its holding "simply ensure[d] that an adequate remedy must provide the possibility of relief under the circumstances." *Id.* In other words, the Supreme Court simply held in *Craig* that the existence of common law claims that were barred by the doctrine of sovereign or governmental immunity did not operate to bar the plaintiff from attempting to assert any constitutional claims that he might have otherwise had against the defendant while expressly declining to address the extent to which his constitutional claims had substantive merit.

The majority notes that *Craig* was not a decision on the merits of the plaintiff's case. Obviously *Craig* was not a decision on the merits and simply affirmed the denial of defendant's motion for summary judgment. *See id.* at 342, 678 S.E.2d at 357. Not even plaintiff argues that the absence of governmental immunity means that she will ultimately prevail on the merits of her claim; she claims only that she has a right to proceed with her constitutional claims. The pivotal holding in *Craig* is that governmental immunity did not bar the plaintiff's claim from proceeding past the summary judgment stage. *See id.* at 342, 678 S.E.2d at 356-57. In fact, as the trial court would have no jurisdiction to consider a claim barred by governmental immunity, *see Meherrin Indian Tribe v. Lewis*, 197 N.C. App. 380, 384, 677 S.E.2d 203, 207 (2009) (noting that while it may be unsettled whether sovereign immunity is based upon subject matter or personal jurisdiction, it is a jurisdictional issue), *disc. review denied*, 363 N.C. 806, 690 S.E.2d 705 (2010), *Craig's* holding that "plaintiff may move forward in the alternative, bringing his colorable claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim" meant that the trial court did have jurisdiction to adjudicate plaintiff's claims fully. *See Craig*, 363 N.C. at 340, 678 S.E.2d at 355.

DOE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.

[222 N.C. App. 359 (2012)]

I entirely agree with the majority's analysis of plaintiff's constitutional claims under N.C. Constitution Article I, Section 15; Article IX, Section 1; and Article I, Section 19; I simply disagree that this Court is at liberty to make this analysis of the claims based upon *Craig. See id.*, 363 N.C. 334, 678 S.E.2d 351. *Craig* posed the question of whether the plaintiff's claim should survive a motion for summary judgment, and the Supreme Court answered this question affirmatively without a discussion of the actual merits of the case. *See id.* As the majority points out,

> According to well-established North Carolina law, governmental immunity is an " 'immunity from suit rather than a mere defense to liability[.]' " *Craig*, 363 N.C. at 338, 678 S.E.2d at 354 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411, 425 (1985))[.]

As such, if a claim properly barred by immunity is allowed to proceed beyond a motion to dismiss or for summary judgment, a major part of the rationale for immunity has been eliminated. *See id.* at 338, 678 S.E.2d at 354. If a case is allowed to proceed past a motion to dismiss or for summary judgment, a substantial part of the protection provided by governmental immunity has been lost as the governmental entity must incur the costs, both direct financial costs as well as the expenditure of government personnel time and effort, to defend the case, regardless of whether the plaintiff ultimately wins or loses. *See id.* Based on the strikingly similar facts and the same legal posture as in *Craig*, we too are asked to determine whether plaintiff's constitutional claims should survive a pre-trial motion; in light of *Craig*, I would also answer the question affirmatively. *See id.*, 363 N.C. 334, 678 S.E.2d 351.

3. Opportunity to Present Claim

Furthermore, the majority determines that plaintiff here, by virtue of bringing her claim before the trial court and this Court "had an opportunity to present her claims to the Court and obtain a determination as to whether those claims had any substantive merit without having to overcome any sovereign or governmental immunity bar" and thus had an adequate remedy. But the plaintiff in *Craig* had exactly the same opportunity, and our Supreme Court determined that "[p]laintiff's remedy cannot be said to be adequate by any realistic measure." *Id.* at 340, 678 S.E.2d at 355. The Supreme Court went on to explain that due to the inadequate remedy and "opportunity" provided by the plaintiff's negligence claim, the plaintiff could bring

a constitutional claim "based on the same facts that formed the basis for his common law negligence claim." *Id.* Thus, the Supreme Court did not consider the plaintiff's remedy to be "adequate" nor did it determine that an "opportunity" was properly provided for the plaintiff "to enter the courthouse doors and present his claim." *Id.* Under the similar facts and procedural posture presented in this case, I do not see how we can claim that plaintiff here had a realistic "opportunity to enter the courthouse doors" or an adequate remedy. *Id.*

### III. Conclusion

"This Court is bound by precedent of the North Carolina Supreme Court[,]" *State v. Gillis,* 158 N.C. App. 48, 53, 580 S.E.2d 32, 36, *disc. review denied,* 357 N.C. 508, 587 S.E.2d 887 (2003), and that Court has determined that governmental or sovereign immunity may not serve as a bar to a properly pled negligence claim which the plaintiff has also labeled as a constitutional claim, albeit without alleging any facts in addition to those which support the negligence claim or make the constitutional claim "colorable;" for this reason, I believe we are bound to affirm the trial court's order denying defendant Board's motion to dismiss. *See Craig,* 363 N.C. 334, 678 S.E.2d 351. Because I believe that the trial court properly denied defendant Board's motion to dismiss plaintiff's constitutional claims based upon *Craig,* I would affirm, and I respectfully dissent.