KEITH CHRISTMAS, AS EXECUTOR AND PERSONAL REPRESENTATIVE FOR THE ESTATE OF ALEXANDR RAYMOND JOHNSON-CHRISTMAS, PLAINTIFF v. CABARRUS COUNTY; CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; JAMES F. COOK, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; CONNIE POLK, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SUPERVISOR/PROGRAM ADMINISTRATOR OF CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; HOPE MOOSE, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SUPERVISOR OF CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; ANGELA BEAMER RATLIFF, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SUPERVISOR OF CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; JANE DOE AND JOHN DOE, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS SUPERVISORS/PROGRAM ADMINISTRATORS OF THE CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; CRYSTALLE WILLIAMS, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SOCIAL WORKER FOR THE CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; TONYA HART, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SOCIAL WORKER FOR THE CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; ROBIN FOX, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SOCIAL WORKER FOR THE CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; CHRISTY BELK, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SOCIAL WORKER FOR THE CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; CAROLINE LEAVELLE, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SOCIAL WORKER FOR THE CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES; DONNA DOE AND DAVID DOE, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS SOCIAL WORKERS FOR THE CABARRUS COUNTY DEPARTMENT OF SOCIAL SERVICES, DEFENDANTS

No. COA07-1301

(Filed 19 August 2008)

**1. Appeal and Error— appealability—sovereign immunity— substantial right**

Although defendant's appeal in a wrongful death case from the denial of its motion to dismiss was from an interlocutory order, it was immediately appealable because cases present-

ing defenses of governmental or sovereign immunity affect a substantial right.

**2. Counties; Immunity— official capacity—home assessment performed by Department of Social Services—public duty doctrine inapplicable**

The trial court did not err in a wrongful death action, alleging negligence of a county department of social services (DSS), by denying defendants' motion to dismiss plaintiff's complaint against them in their official capacities based on the public duty doctrine because: (1) although our Supreme Court has extended the public duty doctrine to cover state agencies where a duty is conferred on the agency by statute and the General Assembly intends for the statute to protect the public as a whole, the public duty doctrine has not been expanded to any local government agencies other than law enforcement departments when they are exercising their general duty to protect the public as a whole; and (2) the home assessment performed by DSS that is required by N.C.G.S. § 7B-302 is different from the mandatory statutory requirements of state agencies to protect the public in general and law enforcement departments who exercise a general duty to protect the public at large, and thus the public duty doctrine did not cover defendants.

Appeal by defendant from orders filed 23 July 2007 and 7 August 2007 by Judges Susan C. Taylor and Clarence E. Horton, Jr., in Cabarrus County Superior Court. Heard in the Court of Appeals 20 March 2008.

*Law Office of G. Lee Martin, P.A., by G. Lee Martin; and Law Offices of Mary Beth Smith, by Mary Beth Smith, for plaintiff appellee.*

*Templeton & Raynor, P.A., by Kenneth R. Raynor, for Cabarrus County, Cabarrus County Department of Social Services, James F. Cook, Jr., Connie Polk, Hope Moose, Angela Beamer Ratliff, Christy Belk, Robin Fox, Crystalle Williams, and Tonya Hart, defendant appellants.*

*Teague, Campbell, Dennis & Gorham, by Courtney C. Britt, for Caroline Leavelle defendant appellant.*

McCULLOUGH, Judge.

On 29 March 2003, Tanya Yevette Johnson ("Johnson") gave birth to Alexandr Raymond Johnson-Christmas ("decedent"), son of Keith Christmas ("plaintiff"). Between 16 November 2004 and 24 December 2004, the Cabarrus County Department of Social Services ("DSS") received reports that decedent had various injuries, which included: knots and bruises on his body, head, and face; cuts on his lip and eye; and injuries to his hands and right buttock. On 16 November 2004 and 6 December 2004 DSS investigated and determined that decedent's household was conditionally safe. A physician at Northeast Medical Center notified DSS, on 24 December 2004, that decedent had possibly suffered a non-accidental trauma. Without an assessment of Johnson, the on-call social worker for DSS determined that decedent could be released back into her care and DSS would assess the case on 27 December 2004.

At the time of these events Johnson was living with her boyfriend Trevor Brown ("Brown"). On 31 December 2004, a social worker visited the home in response to the physician's 24 December 2004 report to DSS; however, no one answered the door. A note was left requesting Johnson to contact DSS. On 2 January 2005, Cabarrus County Emergency Medical Services ("EMS") was called to the home. Johnson informed EMS that decedent had been left at home with Brown for the day and when she returned decedent was vomiting and thirsty, but would not eat. Ultimately, around 4:00 a.m. decedent fell asleep. When Johnson awoke around 8:00 a.m., he was unresponsive. At 8:20 a.m., EMS pronounced decedent dead. An autopsy revealed multiple bodily injuries, and the cause of death was blunt trauma abdominal and head injuries. After an investigation was conducted, Brown was charged and convicted of felony child abuse with serious bodily injury and second-degree murder. Johnson was charged with involuntary manslaughter.

Plaintiff, on behalf of decedent's estate, brought this wrongful death action against Cabarrus County ("County"), Cabarrus County Department of Social Services ("DSS"), Director of DSS James Cook ("Cook"), DSS Supervisor/Program Administrator Connie Polk ("Polk"), DSS Supervisors Hope Moose ("Moose"), Angela Ratliff ("Ratliff"), DSS Social Workers Crystalle Williams ("Williams"), Tonya Hart ("Hart"), Robin Fox ("Fox"), and Christy Belk ("Belk"), and Intern Caroline Leavelle ("Leavelle"). In the complaint plaintiff alleges that DSS supervisory employees failed to adequately train and supervise subordinate employees. Plaintiff further alleges that Cook

CHRISTMAS v. CABARRUS CTY.

[192 N.C. App. 227 (2008)]

negligently failed to adequately assign personnel, maintain work-loads, request sufficient resources, implement policies and proce-dures needed to perform essential DSS functions, and comply with applicable guidelines and laws.

On 9 March 2007, Leavelle amended her answer to plaintiff's com-plaint, which raised governmental and public official immunity. Leavelle included a motion to dismiss plaintiff's claims in her indi-vidual and official capacity pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and raised immunity under the pub-lic duty doctrine. Subsequent to Leavelle's motion, the rest of defend-ants filed timely motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure in their individual and official capacities. On 23 July 2007 and 16 August 2007, motions filed by defendants were heard in Cabarrus County Superior Court. The Honorable Susan C. Taylor and the Honorable Clarence E. Horton, Jr., granted the motions to dismiss plaintiff's claims against defendants in their individual capacities and denied motions to dismiss plaintiff's claims against defendants in their official capacities. All defendants filed timely notice of appeal.[1]

## Preliminary Matter

**[1]** This is an interlocutory appeal, since it fails to "dispose[] of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). Generally, there is no immediate appeal from an interlocutory order. *Harris v. Matthews*, 361 N.C. 265, 269, 643 S.E.2d 566, 568 (2007). "Appellate procedure is designed to eliminate the unneces-sary delay and expense of repeated fragmentary appeals, and to pre-sent the whole case for determination in a single appeal from the final judgment." *Raleigh v. Edwards*, 234 N.C. 528, 529, 67 S.E.2d 669, 671 (1951). Where, however, the interlocutory order deprives the appel-lant of a substantial right which would be lost if not reviewed prior to final judgment, an appeal will lie. *See* N.C. Gen. Stat. § 1-277 (2007).

Cases which present defenses of governmental or sovereign immunity are immediately appealable because such orders affect a substantial right. *See, i.e., Smith v. Jackson Cty. Bd. of Educ.*, 168 N.C. App. 452, 458, 608 S.E.2d 399, 405 (2005). The rationale for the exception to the general rule stems from the nature of the immunity

---

1. On 25 September 2007, defendants gave notice of joinder of their appeals pur-suant to Rule 5 of the North Carolina Rules of Appellate Procedure and filed one brief.

defense. "A valid claim of immunity is more than a defense in a lawsuit; it is in essence immunity from suit. Were the case to be erroneously permitted to proceed to trial, immunity would be effectively lost." *Slade v. Vernon,* 110 N.C. App. 422, 425, 429 S.E.2d 744, 746 (1993). In the instant case, defendants have asserted they are not liable for decedent's death because the public duty doctrine provides immunity. Defendants' appeal is therefore properly before this Court.

## I.

[2] Defendants argue the trial court erred by denying their motion to dismiss plaintiff's complaint against them in their official capacities. Specifically, defendants contend the public duty doctrine bars plaintiff's claims against defendants in their official capacity; therefore, the trial court erred in not granting their motion. We disagree.

On appeal from a motion to dismiss under Rule 12(b)(6), this Court reviews *de novo* "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted[.]" *Harris v. NCNB,* 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim. *Hyde v. Abbott Laboratories,* 123 N.C. App. 572, 575, 473 S.E.2d 680, 682, *disc. review denied,* 344 N.C. 734, 478 S.E.2d 5 (1996).

A county's liability for the torts of its officers and employees depends on whether the activity involved is "governmental" or "proprietary" in nature. *Hare v. Butler,* 99 N.C. App. 693, 698, 394 S.E.2d 231, 235, *disc. review denied,* 327 N.C. 634, 399 S.E.2d 121 (1990). Traditionally, a county was immune from torts committed by an employee carrying out a governmental function, but was liable for torts committed by an employee engaged in a proprietary function. *Id.*

Our Supreme Court has laid out the following distinction between governmental and proprietary acts:

> When a municipality is acting "in behalf of the State" in promoting or protecting the health, safety, security or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers. In either event it must be for a public purpose or public use.

So then, generally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and "private" when any corporation, individual, or group of individuals could do the same thing. Since, in either event, the undertaking must be for a public purpose, any proprietary enterprise must, of necessity, at least incidentally promote or protect the general health, safety, security or general welfare of the residents of the municipality.

*Britt v. Wilmington*, 236 N.C. 446, 450-51, 73 S.E.2d 289, 293 (1952).

"Investigations by a social service agency of allegations involving child sexual abuse are in the nature of governmental functions." *Hare*, 99 N.C. App. at 699, 394 S.E.2d at 235. Such activities are performed for the public good; therefore, a county is normally immune from liability for injuries caused by negligent social services employees working in the course of their duties. *Id.* However, the General Assembly has authorized suit when counties purchase liability insurance. In such cases the county waives immunity from negligent actions that occur in the performance of governmental functions. N.C. Gen. Stat. § 153A-435(a) (2007). Here, plaintiff has alleged that defendants purchased liability insurance. If this is true, DSS, as a county agency, and the county employees may be liable for negligent or intentional actions carried out in the performance of their social services duties. *See Hare*, 99 N.C. App. at 699, 394 S.E.2d at 236.

In this case, the County was performing a governmental function designed to benefit a narrow class of people in assessing the physical safety of the decedent. According to plaintiff, defendants negligently performed their governmental functions. However, defendants claim they are not responsible for these allegations of negligence because they possessed immunity from such claims under the public duty doctrine.

Our Supreme Court specifically adopted the public duty doctrine for the first time in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897, *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1991):

The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially

impose an overwhelming burden of liability for failure to prevent every criminal act.

*Id.* at 370-71, 410 S.E.2d at 901 (citations omitted) (discussing the public duty doctrine in terms of plaintiff's claims against the Sheriff of Pitt County for failure to provide the plaintiff with protection). Since *Braswell,* the Supreme Court of North Carolina has applied the public duty doctrine in limited situations. *See, e.g., Stone v. N.C. Dept. of Labor,* 347 N.C. 473, 495 S.E.2d 711, *reh'g denied,* 348 N.C. 79, 502 S.E.2d 836, *cert. denied,* 525 U.S. 1016, 142 L. Ed. 2d 449 (1998) (holding the public duty doctrine applies because the Department of Labor's duty to inspect workplaces serves the public at large, not individual employees); *Hunt v. N.C. Dept. of Labor,* 348 N.C. 192, 499 S.E.2d 747 (1998) (holding the public duty doctrine applies to claims for failure to properly inspect go-carts because the claim was brought under the Tort Claims Act and the plaintiff failed to establish an exception to the doctrine based on a special relationship or a special duty); *Myers v. McGrady,* 360 N.C. 460, 628 S.E.2d 761 (2006) (holding the public duty doctrine applied because the state agency owed a general statutory duty to the public at large to make a public highway safe where the highway is adjacent to a natural fire).

Our Supreme Court has extended the public duty doctrine to cover state agencies where a duty is conferred on the agency by statute and the General Assembly intends for the statute to protect the public as a whole. *Myers,* 360 N.C. at 468, 628 S.E.2d at 767. However, they have not expanded the public duty doctrine to any local government agencies other than law enforcement departments when they are exercising their general duty to protect the public as a whole. *See Isenhour v. Hutto,* 350 N.C. 601, 608, 517 S.E.2d 121, 126 (1999) (refusing to extend the public duty doctrine to shield a city from liability for the allegedly negligent acts of a school crossing guard); *Lovelace v. City of Shelby,* 351 N.C. 458, 461, 526 S.E.2d 652, 654, *reh'g denied,* 352 N.C. 157, 544 S.E.2d 225 (2000) (refusing to extend the public duty doctrine to shield a city from liability for the allegedly negligent acts of a 911 operator). "This Court has not heretofore applied the public duty doctrine to a claim against a municipality or county in a situation involving any group or individual other than law enforcement." *Thompson v. Waters,* 351 N.C. 462, 465, 526 S.E.2d 650, 652, *reh'g denied,* 352 N.C. 157, 544 S.E.2d 244 (2000).

N.C. Gen. Stat. § 7B-302 (2007) requires DSS to perform an assessment of the child's home environment to ascertain the facts of

the case. N.C. Gen. Stat. § 7B-302(2007). Based on this statute the assessment of the individual's home occurs after a report of "abuse, neglect, or dependency" to DSS. This home assessment is different from the mandatory statutory requirements of state agencies to protect the public in general and law enforcement departments who exercise a general duty to protect the public at large as discussed in *Lovelace* and *Isenhour*. Therefore, we decline to extend the public duty doctrine to cover defendants. *See Lovelace*, 351 N.C. 458, 526 S.E.2d 652; *Isenhour*, 350 N.C. 601, 517 S.E.2d 121. After reviewing the record, we hold plaintiff's allegations are sufficient to state a claim upon which relief may be granted. Thus, defendants' argument is without merit.

II.

Defendants argue the trial court erred in denying their motion to dismiss because plaintiff did not specifically allege an exception to the public duty doctrine. Because we hold the public duty doctrine does not apply, it is irrelevant that plaintiff failed to allege an exception to the doctrine. We find this issue moot.

No error.

Judges STEELMAN and ARROWOOD concur.