IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-988

Filed: 7 January 2020

Wake County, No. 17 CVS 15159

ASHELY DEMINSKI, as guardian ad litem on behalf of C.E.D., E.M.D., and K.A.D., Plaintiffs,

v.

THE STATE BOARD OF EDUCATION, and the PITT COUNTY BOARD OF EDUCATION, Defendants.

Appeal by defendant Pitt County Board of Education from order entered 3 July 2018 by Judge Vince M. Rozier, Jr., in Superior Court, Wake County. Heard in the Court of Appeals 13 March 2019.

*No brief filed for plaintiff-appellee.*

*Tharrington Smith, LLP, by Deborah R. Stagner, for defendant-appellant Pitt County Board of Education.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Elizabeth L. Troutman and Jill R. Wilson, and the North Carolina School Boards Association, by Allison Brown Schafer, for Amicus Curiae North Carolina School Boards Association.*

STROUD, Judge.

The Pitt County Board of Education ("Defendant") appeals from the trial court's order denying its motion to dismiss the portion of Plaintiff's complaint alleging violations of the right to education guaranteed under the North Carolina Constitution. Because this case is controlled by *Doe v. Charlotte-Mecklenburg Board*

*of Education*, 222 N.C. App. 359, 731 S.E.2d 245 (2012), we reverse the trial court's order denying Defendant's motion to dismiss the constitutional claims in the Plaintiff's complaint and remand for further proceedings.

## I.    Background

Plaintiff Ashley Deminski,[1] on behalf of her minor children C.E.D., E.M.D., and K.A.D. ("Minor Plaintiffs"), initiated this action against Defendant and the State Board of Education[2] by filing a verified complaint in Superior Court, Wake County on 11 December 2017.

The complaint was filed in response to Defendant's alleged "deliberate indifference" to the "hostile academic environment" at Lakeforest Elementary School while the Minor Plaintiffs were enrolled there.  Plaintiff alleges that because of Defendant's conduct, the Minor Plaintiffs "were each denied their rights to a sound basic education."

According to the complaint, during the 2016-2017 academic year, Defendant allowed C.E.D. to be "repeatedly and severely bullied" by two particular students, and to be "repeatedly harassed sexually by two other students."  For example, the complaint alleges that Defendant permitted Student #1 and Student #2 to "grab C.E.D. by the shoulders and push along [her] spine with sufficient force that [she] . . .

---

[1] Plaintiff Ashley Deminski's name was misspelled in the caption of the order.

[2] The State Board of Education is not party to the instant appeal.

had trouble breathing and swallowing." This happened "each week" and "at varying times during the school day."

The complaint also describes Student #3's repeated sexual harassment of C.E.D. for two full academic years while at Lakeforest Elementary, as follows:

> a. On multiple occasions, Student #3 put his hands in his pants to play with his genitals in C.E.D.'s presence;
>
> b. On multiple occasions, Student #3 informed C.E.D. he "f***s like a gangster";
>
> . . . .
>
> d. On multiple occasions, Student #3 informed C.E.D. he has "got something special for you" before putting his hands in his pants to play with his genitals;
>
> e. On multiple occasions, Student #3 would play with his genitals and then attempt to touch C.E.D.;
>
> f. On at least one occasion, . . . Student #3 pulled down his pants in the hallway in C.E.D.'s presence to expose his penis and wiggle it to simulate masturbation; and,
>
> g. On at least one occasion, Student #3 pulled down his pants in the classroom in C.E.D.'s presence to expose his penis and show it to her.

This "was in addition to other harassing conduct, including staring at C.E.D., interrupting C.E.D. during tests and other assignments, and repeatedly talking to C.E.D. during instructional time."

School personnel also failed to act when Student #4 would subject C.E.D. to similar sexual harassment:

> 15. Student #4, perhaps encouraged by Student #3's lewd conduct going unaddressed, sexually harassed C.E.D. repeatedly:
>
> > a. On multiple occasions, Student #4 would tell C.E.D. and other students that he and C.E.D. were dating and intimate;
> >
> > b. On at least one occasion, Student #4 rolled a piece of paper to approximate a penis and made motions simulating masturbation while in C.E.D.'s presence; and,
> >
> > c. On at least one occasion, . . . Student #4 rolled a piece of paper to approximate a penis, put it in his pants, walked over to C.E.D. and attempted to show C.E.D. how to insert himself into C.E.D.'s vagina. When C.E.D. attempted to get away from Student #4 and move to another seat, Student #4 attempted to reposition himself to attempt to get under where C.E.D. would be sitting.

Minor Plaintiffs E.M.D. and K.A.D. are diagnosed with autism, and during their enrollment as students at Lakeforest Elementary, services were provided to them under their Individualized Education Plans. The complaint alleges that Defendant allowed both E.M.D. and K.A.D. "to endure substantially the same conduct by Student #3, including sexual conduct, constant verbal interruptions laced with vulgarity, and physical violence including knocking students' items onto the floor, throwing objects, and pulling books and other items off shelves onto the ground."

According to the complaint, C.E.D. "repeatedly informed her teacher of each of the acts by the four students[,]" and Plaintiff also "repeatedly notified the teacher, Assistant Principal, and Principal in efforts to resolve the situation." However, school personnel's only response was to insist that the "process" would "take time;" meanwhile, "no substantive changes" were made, and "the bullying and harassing conduct continued unabated." The uncorrected harassment continued to such a degree that Plaintiff ultimately "obtained a transfer of the Minor Plaintiffs to a new school." Nevertheless, the complaint alleges that "[t]he academic performance of all three Minor Plaintiffs fell as a result of the perpetually chaotic school environment" at Lakeforest Elementary.

Plaintiff asserted one claim for violations of Article I, section 15 and Article IX, section 2 of the North Carolina Constitution, in that Defendant's deliberate indifference to the hostile academic environment at Lakeforest Elementary denied the Minor Plaintiffs "their rights to a sound basic education." As relief, the complaint requested, among other things, that Defendant "be compelled to make all necessary modifications to policy and/or personnel to bring its schools into compliance with the School Violence Prevention Act;"; that Plaintiff recover "compensatory damages . . . to be held in trust for the benefit of the Minor Plaintiffs"; and that the trial court "grant any such additional and further relief as [it] deems proper and just."

Defendant filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted,[3] because Plaintiff's claims were barred by the doctrine of governmental immunity.[4] The trial court denied Defendant's motion to dismiss Plaintiff's constitutional claim by order entered 3 July 2018.[5] Defendant appeals the interlocutory order to this Court.

On appeal, Defendant contends the trial court erred by denying its motion to dismiss Plaintiff's constitutional claim, arguing this Court "has clearly held that public school students do not have a claim for relief under article I or article IX of the North Carolina Constitution based on allegations of failure by school employees to prevent harm by a third party." Defendant maintains that Plaintiff "may not avoid the effect of the Board's governmental immunity by simply labeling a tort action as a constitutional claim." The North Carolina School Boards Association filed an amicus brief with this Court contending the same. Amicus further emphasizes that "[d]eclaring individual educational claims to be constitutional violations would be disastrous public policy for the State and boards of education."

---

[3] The State Board of Education likewise filed a motion to dismiss, which was granted. This order was not appealed.

[4] Defendant also filed a motion to dismiss for lack of standing under Rules 12(b)(1) and (6), asserting that "Plaintiff Ashley Deminski has not been duly appointed by the Court to serve as guardian ad litem for the [Minor Plaintiffs]." However, the trial court did not specify the grounds upon which its order was based, and Defendant does not raise an argument concerning standing on appeal.

[5] Plaintiff's complaint also asserted a claim against Defendant for violation of the School Violence Prevention Act, North Carolina General Statute § 115C-407.15 *et seq.*, which the trial court dismissed. Plaintiff did not appeal the trial court's dismissal of this claim.

II.    Interlocutory Appeal

The trial court's order denying Defendant's motion to dismiss Plaintiff's constitutional claim is interlocutory in that it "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). This Court will not generally entertain an appeal from an interlocutory order. *Doe,* 222 N.C. App. at 363, 731 S.E.2d at 248. However, a party may immediately appeal an interlocutory order where the order "deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Id.*

Here, Defendant argues that the trial court's order denying its motion to dismiss Plaintiff's constitutional claim is immediately appealable because it affects Defendant's substantial right to governmental immunity. *See Christmas v. Cabarrus Cty.*, 192 N.C. App. 227, 230, 664 S.E.2d 649, 652 (2008) ("Cases which present defenses of governmental or sovereign immunity are immediately appealable because such orders affect a substantial right."). Although the doctrine of governmental immunity will not operate to bar a *constitutional* claim, for the reasoning articulated in *Doe v. Charlotte-Mecklenburg Board of Education*, we conclude that Defendant's appeal is properly before this Court. *See Doe*, 222 N.C. App. at 365, 731 S.E.2d at 249 ("A failure to evaluate the validity of Plaintiff's constitutional claims would allow

Plaintiff to simply re-label claims that would otherwise [be] barred on governmental immunity grounds as constitutional in nature, effectively circumventing the Board's right to rely on a governmental immunity bar.").

## III.  Standard of Review

Upon appeal from the denial of a defendant's motion to dismiss under Rule 12(b)(6), this Court must review *de novo* "whether, as a matter of law, the allegations of the complaint are sufficient to state a claim upon which relief may be granted." *Christmas*, 192 N.C. App. at 231, 664 S.E.2d at 652 (ellipsis and brackets omitted). This Court "must consider the allegations in the plaintiff's complaint to be true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if the plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim." *Doe*, 222 N.C. App. at 366, 731 S.E.2d at 250 (quotation marks and brackets omitted).

## IV.  The Right to Education

A.  Governmental Immunity

Under the doctrine of governmental immunity, county boards of education are often shielded "entirely from having to answer for [their] conduct at all in a civil suit for damages." *See Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009). As our Supreme Court has made clear, however, the doctrine of governmental immunity will not "stand as a barrier to North Carolina citizens who

seek to remedy violations of their rights guaranteed by the Declaration of Rights" under the North Carolina Constitution. *Corum v. University of North Carolina*, 330 N.C. 761, 785-86, 413 S.E.2d 276, 291 (1992).

It is, therefore, well settled that an individual may bring a direct claim under the North Carolina Constitution where the individual's constitutional rights have been abridged, but she is otherwise without an adequate remedy under state law— for example, when her common law claim would be barred by the doctrine of governmental immunity. *Id.* at 782, 413 S.E.2d at 289; *see also Craig*, 363 N.C. at 340, 678 S.E.2d at 355 ("Plaintiff's common law cause of action for negligence does not provide an adequate remedy at state law when governmental immunity stands as an absolute bar to such a claim. But . . . plaintiff may move forward in the alternative, bringing his colorable claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim.").

Accordingly, a colorable direct constitutional claim will survive a Rule 12(b)(6) motion to dismiss, notwithstanding the doctrine of governmental immunity. *Craig*, 363 N.C. at 340-41, 678 S.E.2d at 355-56. We now consider whether Plaintiff has stated such a claim here.

B.  *Leandro v. State of North Carolina*

The North Carolina Constitution explicitly guarantees the "right to a free public education." *Leandro v. State of North Carolina*, 346 N.C. 336, 345, 488 S.E.2d

249, 254 (1997). Specifically, Article I, section 15 provides that "[t]he people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." N.C. Const. art. I, § 15. Article IX, section 2 further provides that "[t]he General Assembly shall provide . . . for a general and uniform system of free public schools, . . . wherein equal opportunities shall be provided for all students." *Id.* art. IX, § 2(1).[6]

In the landmark decision of *Leandro v. State of North Carolina*, our Supreme Court considered whether the right to education under Article I, section 15 and Article IX, section 2 has "any qualitative content, that is, whether the state is required to provide children with an education that meets some minimum standard of quality." 346 N.C. at 345, 488 S.E.2d at 254. The Supreme Court answered "in the affirmative," and concluded that

> the right to education provided in the state constitution is a right to a sound basic education. An education that does not serve the purpose of preparing students to participate and compete in the society in which they live and work is

---

[6] Based on *Hoke County Board of Education v. State of North Carolina*, 358 N.C. 605, 599 S.E.2d 365 (2009) (*Leandro II*), and *Silver v. Halifax County Board of Commissioners*, 371 N.C. 855, 821 S.E.2d 755 (2018), our dissenting colleague notes, "the State is a necessary party to the instant action but has not been joined as such." We did not address this issue for two reasons. First, it was not raised by the parties. Second, even if the Plaintiff's claims fell within the constitutional right to a sound basic education, *Silver v. Halifax County* did not give this Court the authority to direct *sua sponte* that the State be added as a party. In *Silver*, the Supreme Court did not suggest that the State must be added as a party, despite its clear recognition of the State's duty: "[W]e are not confronted by a civil action that is merely imperfect, but rather we have been presented with an action that must fail because plaintiffs simply cannot obtain their preferred remedy against this particular defendant on the basis of the claim that they have attempted to assert in this case. The allegations in plaintiffs' complaint, if true, are precisely the type of harm *Leandro I* and its progeny are intended to address. In keeping with *Leandro*, however, *the duty to remedy these harms rests with the State, and the State alone.*" 371 N.C. at 869, 821 S.E.2d at 764 (emphasis added).

devoid of substance and is constitutionally inadequate.

*Id.* Our Supreme Court proceeded to more particularly define a "sound basic education" as

> one that will provide the student with at least: (1) sufficient ability to read, write, and speak the English language and a sufficient knowledge of fundamental mathematics and physical science to enable the student to function in a complex and rapidly changing society; (2) sufficient fundamental knowledge of geography, history, and basic economic and political systems to enable the student to make informed choices with regard to issues that affect the student personally or affect the student's community, state, and nation; (3) sufficient academic and vocational skills to enable the student to successfully engage in post-secondary education or vocational training; and (4) sufficient academic and vocational skills to enable the student to compete on an equal basis with others in further formal education or gainful employment in contemporary society.

*Id.* at 347, 488 S.E.2d at 255.

In *Doe v. Charlotte-Mecklenburg Board of Education*, the plaintiff sued her local school board, alleging a violation of her constitutional right to education. 222 N.C. App. at 361, 731 S.E.2d at 247. The plaintiff's claims were based upon

> sexual abuse that she suffered at the hands of Defendant Richard Priode, her band teacher at South Mecklenburg High School. According to Plaintiff's complaint, Defendant Priode made sexual advances towards her and eventually induced her to engage in various types of sexual activity, including oral sex and vaginal intercourse, with him both on and off school grounds. Defendant Priode was later arrested, charged, and entered a plea of guilty to taking indecent liberties with a child as a result of his involvement

with Plaintiff.

*Id.* Based upon these facts, the plaintiff in *Doe* asserted these claims:

> In her complaint, Plaintiff asserted claims against Defendant Board for negligent hiring, supervision, and retention; negligent infliction of emotional distress; and violation of Plaintiff's rights to an education and to proper educational opportunities as guaranteed by N.C. Const. art. I, § 15 and N.C. Const. art. IX, § 1, and her right to obtain a safe education as guaranteed by N.C. Const. art. I, § 19. According to Plaintiff, the Board should have recognized the signs that Defendant Priode posed a threat to her and taken action to prevent the sexual abuse which she suffered at his hands. More specifically, Plaintiff alleged, with respect to her constitutional claims, that:
>
>> 40. As a separate and distinct cause of action, Plaintiff sues the Defendants for violating her constitutional rights pursuant to North Carolina State Constitution in the following particulars:
>>
>> a. Violation of Article I[,] Section 15 on the grounds that the Defendant allowed the conduct as alleged in this complaint and that this conduct deprived the Plaintiff of her right to an education that is free from harm:
>>
>> b. Violation of Article IX[,] Section 1 in that the Plaintiff was denied educational opportunities free from physical harm or psychological abuse; and
>>
>> c. Violation of Article I[,] Section 19 in that the Plaintiff has been deprived of her liberty, interest and privilege in an education free from abuse or psychological harm as alleged in this complaint.

*Id.* (alterations in original).

This Court concluded that the constitutional right to education did not encompass claims arising from abuse of a student, even on school premises. *Id.* at 370. 731 S.E.2d at 252-53. We noted *Leandro*'s enumeration of the right to education was strictly confined to the intellectual function of academics, and that neither this Court nor our Supreme Court had extended that right "beyond matters that directly relate to the nature, extent, and quality of the educational opportunities made available to students in the public school system." *Id.* Simply put, the right guaranteed to students under the North Carolina Constitution is the opportunity to receive a *Leandro*-compliant education, and that right is satisfied so long as such an education has, in fact, been afforded.[7]

Because the psychological harm in *Doe* was alleged to have been suffered as the result of a "negligent failure to remain aware of and supervise the conduct of public school employees," *id.* at 371, 731 S.E.2d at 253, rather than of any inadequacy in the "nature, extent, and quality of the *educational opportunities made available to*" the plaintiff, the allegations failed to state a claim for violation of the constitutional right to education. *Id.* at 370, 731 S.E.2d at 253 (emphasis added). We therefore reversed the trial court's denial of the defendant's motion to dismiss that claim. *Id.* at 372, 731 S.E.2d at 254.

---

[7] North Carolina General Statute § 115C-42 immunizes the State's educational entities from liability for harm suffered by students, short of constitutional deprivation. "[A]ny change in this doctrine should come from the General Assembly." *See Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 324, 420 S.E.2d 432, 435 (1992).

Here, the abuse was perpetrated by other students instead of a school employee as in *Doe*, but the claims are otherwise essentially the same. As in *Doe*, the Plaintiff alleges that school personnel were aware or should have been aware of the abuse the Minor Plaintiffs suffered at school but they failed to prevent it. Both alleged that the abuse they suffered deprived them of their constitutionally protected right to a sound basic education. The plaintiff in *Doe* alleged that she was deprived of her right to an education that is "free from physical harm or psychological abuse" under North Carolina's Constitution. *Id.* at 361, 731 S.E.2d at 247. The fact that the complaint in this case goes into more factual detail about the abuse and how it harmed the Minor Plaintiffs' educational opportunities does not change the result. Neither this Court nor our Supreme Court has recognized abuse, even repeated abuse, or an abusive classroom environment as a violation of the constitutional right to education.

This Court fully considered the rights addressed by *Leandro v. State of North Carolina*, 346 N.C. 336, 488 S.E.2d 249 (1997), in the context of physical or psychological abuse of a student at school in *Doe* and determined:

> To date, we are not aware of any decision by either this Court or the Supreme Court which has extended the educational rights guaranteed by N.C. Const. art. I, § 15 and N.C. Const. art. IX, § 1, beyond matters that directly relate to the nature, extent, and quality of the educational opportunities made available to students in the public school system. Although the serious wrongfulness inherent in the actions in which Defendant Priode allegedly engaged should not be minimized in any way, we are unable to see how the allegations set out in Plaintiff's

> complaint state a claim for violating these constitutional provisions. Put another way, we are unable to discern from either the language of the relevant constitutional provisions or the reported decisions construing these provisions that North Carolina public school students have a state constitutional right to recover damages from local boards of education for injuries sustained as the result of a negligent failure to remain aware of and supervise the conduct of public school employees. As a result, Plaintiff's complaint "on its face reveals the absence of facts sufficient to make a good claim" under N.C. Const. art. I, § 15 or N.C. Const. art. IX, § 1, such that Plaintiff has failed to state a claim based on those constitutional provisions upon which relief may be granted.

*Doe*, 222 N.C. App. at 370-71, 731 S.E.2d at 252-53.

The factual allegations of Plaintiff's complaint, which we consider for purposes of a motion to dismiss as true, are extremely disturbing; no child should be subjected to this sort of harassment at school or anywhere else. The alleged failure of school personnel to take immediate action to protect the Minor Plaintiffs is troubling, but we cannot distinguish this case from *Doe*, 222 N.C. App. 359, 731 S.E.2d 245. Accordingly, Plaintiff's complaint stated "a defective cause of action," and Defendant's motion to dismiss should have been granted. *See Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 4, 745 S.E.2d 316, 319 (2013).

## V.  Conclusion

For the reasons set forth above, we reverse the trial court's denial of Defendant's motion to dismiss Plaintiff's constitutional claim and remand for further proceedings.

REVERSED AND REMANDED.

Judge INMAN concurs.

Judge ZACHARY dissents with separate opinion.

ZACHARY, Judge, dissenting.

The right to education set forth in the North Carolina Constitution requires that our State's educational entities provide their students with an education that meets a certain minimum standard of quality. "An education that does not serve the purpose of preparing students to participate and compete in the society in which they live and work is devoid of substance and is constitutionally inadequate." *Leandro v. State*, 346 N.C. 336, 345, 488 S.E.2d 249, 254 (1997). Because the facts alleged in Plaintiff's complaint establish that Defendant failed to provide Minor Plaintiffs with the constitutionally adequate quality of education, I respectfully dissent.

## Discussion

### I. The Right to Education—*Leandro v. State of North Carolina*

It is undisputed that our state constitution explicitly guarantees the "right to a free public education." *Id.* Specifically, article I, section 15 provides that "[t]he people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." N.C. Const. art. I, § 15. Article IX, section 2 further provides that "[t]he General Assembly shall provide . . . for a general and uniform system of free public schools, . . . wherein equal opportunities shall be provided for all students." *Id.* art. IX, § 2(1).

In its 1997 decision in *Leandro v. State*, our Supreme Court held that together, article I, section 15 and article IX, section 2, require the State to provide North Carolina children with a sound basic education. 346 N.C. at 345, 488 S.E.2d at 254.

Nonetheless, as the majority notes, the constitutional right to education has been narrowly interpreted in subsequent case law. *See, e.g.*, *Doe v. Charlotte-Mecklenburg Bd. of Educ.*, 222 N.C. App. 359, 370, 731 S.E.2d 245, 252 (2012). The majority, however, misconstrues this precedent as imposing an outright prohibition against the prosecution of any such claim grounded in tort. I find no support for such an interpretation. The post-*Leandro* jurisprudence does not limit the *conduct* that may give rise to a claim for violation of the constitutional right to education; any such judicial limitations have only pertained to the *scope* of the constitutional right that is subject to enforcement.

The majority's holding rests primarily upon this Court's analysis in *Doe v. Charlotte-Mecklenburg Board of Education. Id.* The plaintiff in *Doe* filed suit against her local school board, alleging a violation of her constitutional right to education. *Id.* In her complaint, the plaintiff alleged that her high school's band teacher had "made sexual advances towards her and eventually induced her to engage in various types of sexual activity, including oral sex and vaginal intercourse, with him both on and off school grounds." *Id.* at 361, 731 S.E.2d at 247. The plaintiff further claimed that in allowing this conduct to occur, the school board had "violated her 'right to an education *that was free from harm'* and *'psychological abuse.'* " *Id.* at 370, 731 S.E.2d at 252 (emphases added) (brackets omitted).

This Court disagreed, and determined that the constitutional right to education is limited to "matters that directly relate to the nature, extent, and quality of the educational opportunities made available to students in the public school system." *Id.* at 370, 731 S.E.2d at 252-53.

In *Doe*, the school board's alleged "negligent failure to remain aware of and supervise the conduct of public school employees" was collateral to the "nature, extent, and quality of the educational opportunities made available to" the plaintiff. *Id.* at 370-71, 731 S.E.2d at 253. Thus, absent any allegation that the school board had failed to provide the plaintiff with a *Leandro*-compliant education, the school board's alleged negligence in allowing the illicit sexual activity to occur, though appalling, fell short of a *constitutional violation.*

The allegations presented in the case at bar are manifestly distinguishable from those in *Doe*. The conduct of which Plaintiff complains violates the constitutional ambit set forth in *Leandro*.

Here, unlike in *Doe*, Plaintiff explicitly charges Defendant with the failure to provide the Minor Plaintiffs with the very "nature, extent, and quality of the educational opportunities" to which all public school students are constitutionally entitled pursuant to *Leandro*. *Id.* at 370, 731 S.E.2d at 253. Plaintiff's complaint reveals that the hostile classroom environment at Lakeforest Elementary School was such that there was a persistent, two-year-long interruption of the Minor Plaintiffs'

3

daily test-taking, assignment, and instructional opportunities. Due to Defendant's indifference to this environment, the "academic performance of all three Minor Plaintiffs fell . . . with the Minor Plaintiffs each suffering substantially adverse educational consequences."

Taking these allegations as true, as we must, Plaintiff's claim falls squarely within the constitutional deprivation that was contemplated in *Leandro*.[8] *See Leandro*, 346 N.C. at 345, 488 S.E.2d at 254 ("An education that does not serve the purpose of preparing students to participate and compete in the society in which they live and work is devoid of substance and is constitutionally inadequate."); *see also* N.C. Const. art. I, § 15 ("The people have a right to the privilege of education, and it is the duty of the State to *guard and maintain* that right." (emphasis added)).

Nevertheless, in its *amicus* brief to this Court, the North Carolina School Boards Association contends that "[d]eclaring individual educational claims to be

---

[8] In fact, our General Assembly has also recognized, through the enactment of Chapter 115C, Articles 27, 27A, and 29C, that providing an education of the standard guaranteed by the North Carolina Constitution necessarily requires an environment that is conducive to learning—or at the very least, one that does not hinder learning. *See, e.g.*, N.C. Gen. Stat. § 115C-390.2(f) (2017) ("Board policies shall . . . restrict[ ] the availability of long-term suspension or expulsion to . . . serious violations of the board's Code of Student Conduct that . . . threaten to substantially disrupt the educational environment."); *Id*. § 115C-397.1 ("Management and placement of disruptive students"); *Id*. § 115C-407.17 ("Schools shall develop and implement methods and strategies for promoting school environments that are free of bullying or harassing behavior."); *see also Leandro*, 346 N.C. at 354, 488 S.E.2d at 259 ("To the extent that plaintiff[s] can produce evidence tending to show that defendants have committed . . . violations of chapter 115C alleged in the complaints and that those violations have deprived children . . . of the opportunity to receive a sound basic education, plaintiff[s] are entitled to do so.").

constitutional violations would be disastrous public policy for the State and boards of education." Of course, the same could be said for *any* constitutional violation that the private right of action endeavors to deter.

Moreover, it would be credulous to differentiate, for constitutional purposes, between a student whose teacher refuses to teach math and a student whose teacher fails to intervene when other students' harassing and disruptive behavior prevents her from learning it.[9]  In the latter instance, the instructional environment may be so disordered, tumultuous, or even violent that the student is denied the opportunity to receive a sound basic education. *Cf. King v. Beaufort Cty. Bd. Of Educ.*, 364 N.C. 368, 376, 704 S.E.2d 259, 264 (2010) ("The primary duty of school officials and teachers . . . is the education and training of young people. Without first establishing discipline and maintaining order, teachers cannot begin to educate their students." (citation omitted)).

This is precisely what Plaintiff has alleged in the instant case.  At this stage in the proceedings, Plaintiff's allegations must be taken as true, and the trial court did not err by allowing her the opportunity to produce a forecast of evidence tending to prove the same. I would therefore affirm the trial court's order denying Defendant's motion to dismiss Plaintiff's constitutional claim. Accordingly, I respectfully dissent.

---

[9] I would emphasize that "[n]one of the preceding cases contains any suggestion that the fundamental right to the opportunity for a sound basic education is limited to any particular context." *King v. Beaufort Cty. Bd. of Educ.*, 364 N.C. 368, 381, 704 S.E.2d 259, 267 (2010) (Timmons-Goodson, J., concurring in part and dissenting in part).

II. *Silver v. Halifax County Board of Commissioners*

Lastly, I note that the State is a necessary party to the instant action, but has not been joined as such.

Historically, our courts have expressed no issue with a county board of education being a proper party to a claim alleging violation of various constitutional rights related to education. *See, e.g., id.* at 378, 704 S.E.2d at 265; *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 678 S.E.2d 351 (2009); *Sneed v. Bd. of Educ.*, 299 N.C. 609, 264 S.E.2d 106 (1980); *see also* N.C. Gen. Stat. § 115C-47(1) (2017) ("It shall be the duty of local boards of education to provide students with the opportunity to receive a sound basic education . . . ."). As our Supreme Court explained in *Hoke County Board of Education v. State*, the appropriateness of joining a local board of education as a party to a claim alleging a violation of article I, section 15 rests upon the reality that any resulting decision is "likely to: (1) be based, in significant part, on their role as education providers; and (2) have an effect on that role in the wake of the proceedings." 358 N.C. 605, 617, 599 S.E.2d 365, 378 (2004) ("*Leandro II*"); *see also id.* at 617, 599 S.E.2d at 377-78 ("[T]he school boards clearly held a stake in the trial court's determination of whether or not the student plaintiffs were being denied their right to an opportunity to obtain a sound basic education.").

Proper parties notwithstanding, our Supreme Court recently held in *Silver v. Halifax County Board of Commissioners* that the State must be joined as a party

defendant to any otherwise valid claim alleging a violation of article I, section 15.[10]

*See generally* 371 N.C. 855, 821 S.E.2d 755 (2018). Indeed, the text of article I, section 15 provides: "The people have a right to the privilege of education, and it is the duty of *the State* to guard and maintain that right." N.C. Const. art. I, § 15 (emphasis added). Thus, "to the extent that a county, as an agency of the State, hinders the opportunity for children to receive a sound basic education, it is the State's constitutional burden to take corrective action." *Silver,* 371 N.C. at 868, 821 S.E.2d at 764.

Therefore, although Defendant is indeed a proper party to the instant action,[11] the holding in *Silver* directs that the State will shoulder the "ultimate responsibility,"

---

[10]

> Necessary parties *must* be joined in an action. Proper parties *may* be joined. . . . A necessary party is one who is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence. A proper party is one whose interest may be affected by a decree, but whose presence is not essential in order for the court to adjudicate the rights of others.

*Carding Devs. v. Gunter & Cooke*, 12 N.C. App. 448, 451-52, 183 S.E.2d 834, 837 (1971) (citations omitted).

[11] For instance, Plaintiff's complaint seeks relief from Defendant in the form of a "permanent [injunction] from assigning any of the Minor Plaintiffs to attend Lakeforest Elementary School," as well as a mandatory injunction "to make all necessary modifications to policy and/or personnel to bring [Defendant's] schools into compliance with the School Violence Prevention Act." In that the General Assembly has delegated to county boards of education a corresponding statutory duty to provide students with the opportunity to receive a sound basic education, *see* N.C. Gen. Stat. § 115C-47(1), Defendant *does*, "on its own, have the authority to provide [this] relief." *Silver v. Halifax Cty. Bd. of Comm'rs*, 255 N.C. App. 559, 587, 805 S.E.2d 320, 339 (2017), *aff'd*, 371 N.C. 855, 821 S.E.2d 755 (2018); *e.g., Sneed*, 299 N.C. at 611, 619, 264 S.E.2d at 109, 114 (requiring the defendant Greensboro City Board of Education to amend its "constitutionally infirm" fee waiver policy); *cf. Silver*, 371 N.C. at 861, 868, 821 S.E.2d at 759-60, 764 (affirming the trial court's Rule 12(b)(6) dismissal of the

and hence, must be joined as a necessary party. *Id.* at 866-67, 821 S.E.2d at 762-63. Plaintiff, however, did not join the State as a defendant, as *Silver* requires. Our Supreme Court did not issue its decision in *Silver* until 21 December 2018—one year after Plaintiff filed her complaint in the instant case, and nearly two months after briefs were filed in this Court.

Accordingly, although I would affirm the trial court's denial of Defendant's motion to dismiss Plaintiff's constitutional claim, I would remand the matter with instruction for the trial court to allow Plaintiff the opportunity to join the State as a party to the instant action. *See, e.g.*, *City of Albemarle v. Sec. Bank & Tr. Co.*, 106 N.C. App. 75, 77, 415 S.E.2d 96, 98 (1992) ("The absence of a necessary party under Rule 19, N.C. Rules of Civil Procedure, does not merit dismissal of the action."); *see also White v. Pate*, 308 N.C. 759, 764, 304 S.E.2d 199, 203 (1983) ("Any such defect[,] [that is, absence of a necessary party,] should be corrected by the trial court *ex mero motu* in the absence of a proper motion [to join the necessary party] by a competent person.").

---

plaintiffs' claims for declaratory judgment and injunctive relief against the Halifax County Board of Commissioners for its alleged violation of the plaintiffs' constitutional right to education, which the plaintiffs alleged was caused by the Board's method of distributing local sales tax revenue, because (1) a board of county commissioners is not responsible for affording children the opportunity to receive a sound basic education, and (2) the General Assembly had already provided a statutory remedy for the allegedly inadequate funding of which the plaintiffs complained (citing N.C. Gen. Stat. § 115C-431).

*Zachary, J., dissenting*

9